Michael A. Schwartz (*pro hac vice pending*)
    E-mail: schwarma@pepperlaw.com
**PEPPER HAMILTON LLP**
Two Logan Square
Philadelphia, PA 19103-2799
Telephone: (215) 981-4494

Jeffrey M. Goldman (SBN 233840)
    E-mail: goldmanj@pepperlaw.com
**PEPPER HAMILTON LLP**
4 Park Plaza, Suite 1200
Irvine, CA 92614-2524
Telephone: (949) 567-3547
Fax: (866) 728-3537

Jessica Spradling Russell (SBN 298558)
    E-mail: russellj@pepperlaw.com
**PEPPER HAMILTON LLP**
333 Twin Dolphin Drive, Suite 400
Redwood City, CA 94065-1434
Telephone: (650) 802-3600
Fax: (650) 802-3650

Attorneys for Defendants
Janssen Pharmaceutica, N.V.,
Janssen Pharmaceuticals, Inc.,
Janssen Research & Development, LLC,
Johnson & Johnson, and Ortho-McNeil

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA and THE STATES OF ARKANSAS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MISSOURI, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, VIRGINIA, WASHINGTON AND THE DISTRICT OF COLUMBIA** | No.: 2:16-CV-06997-RGK-RAO<br><br>**DEFENDANTS JANSSEN PHARMACEUTICA, N.V., JANSSEN PHARMACEUTICALS, INC., JANSSEN RESEARCH & DEVELOPMENT, LLC, AND ORTHO-MCNEIL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION TO DISMISS RELATOR'S COMPLAINT**<br><br>Date: April 16, 2018<br>Time: 9:00 a.m.<br>Place: Courtroom 850 |

1   *ex rel.* **ALEXANDER VOLKHOFF, LLC,**

2                                    Plaintiffs,

3              *v.*

4   **JANSSEN PHARMACEUTICAL N.V.,**
    **JANSSEN PHARMACEUTICALS,**

5   **INC., and JANSSEN RESEARCH &**
    **DEVELOPMENT, LLC, JOHNSON &**

6   **JOHNSON, and ORTHO-MCNEIL,**

7                                   Defendants.

8

Honorable R. Gary Klausner

[Filed concurrently with: Notice of
Motion to Dismiss; Request for
Judicial Notice; Declaration of
Jeffrey M. Goldman; and Proposed
Order]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   Introduction ........................................................................................ 1

II.  Count VII Should Be Dismissed Because An LLC Does Not Have Standing to
     Bring a Retaliation Claim Under the False Claims Act .................................. 2

III. Counts I, II, and III Should Be Dismissed For Failure To Adequately Plead
     Claims For Violation of the False Claims Act ........................................... 3

  A.  Olysio ......................................................................................... 4

     1.  Allegations Regarding Dual Therapy ............................................. 5

     2.  Allegations Regarding Improper Patient Sub-Types ........................... 6

  B.  Xarelto, Levaquin, Nucynta, Nucynta ER, and Ultram ER ..................... 7

  C.  Other Drugs Identified by Relator ..................................................... 9

  D.  Relator Has Failed to Allege Materiality As to Any of the 12 Drugs ........ 9

  E.  Relator Failed to Allege Causation As to Any of the 12 Drugs .............. 10

IV.  Counts IV, V, and VI Should Be Dismissed Because Relator Fails to State an
     FCA Claim Based on Alleged Anti-Kickback Violations .......................... 11

V.   Additional Reasons Why The Complaint Should Be Dismissed .................... 14

  A.  Relator's Claims Before September 2010 Are Barred by the False Claims
      Act's Statute of Limitations ........................................................... 14

  B.  Relator's Claims Based On Publicly Disclosed Information .................... 15

VI.  Relator's State Law Claims Should Be Dismissed .................................. 15

VII. Conclusion ..................................................................................... 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*City of Chicago v. Purdue Pharma L.P.*, No. 14 C 4361, 2015 U.S.
  Dist. LEXIS 60587 (N.D. Ill. May 8, 2015).......................................... 15

*Grant v. Aurora Loan Servs.*, 736 F. Supp. 2d 1257 (C.D. Cal. 2010)...................... 1

*Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037 (9th Cir. 2012) .......................... 3

*In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) . 15

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .................................................. 1

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d
  995 (9th Cir. 2002) ............................................................................... 10

*United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745
  (S.D. Tex. 2010) ...................................................................................... 4

*United States ex rel. Brown v. Celgene*, 226 F. Supp. 3d 1032 (C.D.
  Cal. 2016) ...................................................................... 1, 4, 10, 11, 13

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d
  1047 (9th Cir. 2011) ......................................................................... 3, 10

*United States ex rel. Fryberger v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796
  (N.D. Cal. 2014) .................................................................................. 2, 3

*United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir.
  1996) ...................................................................................................... 14

*United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565 (9th Cir.
  2016) ...................................................................................................... 15

*United States ex rel. Modglin v. DJO Global, Inc.,* 114 F. Supp. 3d 993
  (C.D. Cal. 2015) .............................................................................. 3, 4, 16

*United States ex rel. Petratos v. Genentech, Inc.*, 855 F. 3d 481 (3d
  Cir. 2017)................................................................................................. 9

*United States ex. rel. Ruckh v. Salus Rehab., LLC*, No. 8:11-cv-1303-
T-23TBM, 2018 U.S. Dist. LEXIS 5148 (M.D. Fla. Jan. 11, 2018)....................9

*United States ex rel. Solis v. Millennium Pharms., Inc.*, 95 F. Supp. 3d
1208 (W.D. Wash. 2015).......................................................................15

*United States v. Caronia*, 703 F.3d 149 (2d Cir. 2012) .............................................4

*United States v. Medtronic, Inc.*, No. LA CV15-01212 JAK (ASx),
2017 U.S. Dist. LEXIS 153887 (C.D. Cal. Sept. 11, 2017)...............2, 11, 12, 16

*Universal Health Services, Inc. v. United States ex. rel. Escobar*, 579
U.S. __, 136 S. Ct. 1989 (2016) .........................................................9

**STATUTES**

*28 U.S.C. § 1367(c)(3)*.........................................................................16

*31 U.S.C. § 3730(e)(4)(A)*.....................................................................15

*31 U.S.C. § 3730(h)* .......................................................................2, 3

*31 U.S.C. § 3731(b)* ...........................................................................14

*42 U.S.C. § 1320a-7b(b)(2)(B)* ............................................................11

*California's Insurance Frauds Prevention Act, Ins. Code §§ 1871, et
seq.* ..................................................................................................15

*False Claims Act, 31 U.S.C. §§ 3729-3733*........................................*passim*

*Food, Drug & Cosmetics Act, 21 U.S.C. § 301, et seq.* .............................5

*Stark Act, 42 U.S.C. § 1395nn* .................................................................11

**OTHER AUTHORITIES**

U.S. Const. amend. I.........................................................................4, 5

Fed. R. Civ. P. 9(b).....................................................................*passim*

Olysio Labels, from November 22, 2013 to November 9, 2017,
*available at*
https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=o
verview.process&ApplNo=205123 .................................................6, 7

*AASLD, IDSA & IAS-USA Announce New Hepatitis C Treatment Guidelines*, HIVANDHEPATITIS (Jan. 29, 2014), *available at* http://www.hivandhepatitis.com/hcv-treatment/hcv-treatment-guidelines/4497-aasld-and-idsa-announce-new-hepatitis-c-treatment-guidelines .................................................................4

*Testing, Managing, and Treating Adults Infected With Hepatitis C Virus*, 62 HEPATOLOGY 932 (2015), *available at* http://onlinelibrary.wiley.com/doi/10.1002/hep.27950/pdf ..................................4

TABLE OF AUTHORITIES

## I.     INTRODUCTION

Relator Alexander Volkhoff, LLC – an entity formed less than one month before filing this Complaint[1] – attempts to assert that the Janssen Defendants[2] engaged in a laundry list of allegedly inappropriate promotional activities, including off-label marketing, misbranding, and paying kickbacks, arising out of its sales of 12 different drugs over a period of more than a decade.  Although the principal of Relator is a former Janssen salesperson with "personal experiences and industry insider information," the Complaint contains nothing more than a patchwork of disconnected allegations, most of which are bald recitations of the legal standards and none of which are sufficient to state a claim under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.  *See* Compl. ¶¶ 37, 39.  Rather than curing these pleading defects, the attached exhibits establish nothing more than that the Janssen Defendants engaged in lawful marketing and business development activities typical of a pharmaceutical manufacturer, not a far reaching scheme to violate federal law.

Contrary to Relator's insinuations, "it is perfectly lawful for physicians to prescribe drugs for off-label use."  *United States ex rel. Brown v. Celgene*, 226 F. Supp. 3d 1032, 1038 n.3 (C.D. Cal. 2016).  Likewise, payments to physicians for participation in educational and promotional programs are routinely and properly made in the pharmaceutical industry and are not *per se* improper "kickbacks."  *Id.* at 1054-55 (discussing legitimate physician speaker programs).  Based on these

---

[1] *See* Entity details regarding Alexander Volkhoff, LLC obtained from the Delaware Secretary of State (attached as Exhibit 1 to the Goldman Declaration), of and about which this Court may take judicial notice, *see Grant v. Aurora Loan Servs.*, 736 F. Supp. 2d 1257, 1265 (C.D. Cal. 2010).

[2] As explained in greater detail in a separate motion filed by co-defendant Johnson & Johnson, Relator's claims should be dismissed because Relator has failed to plead individualized allegations against each defendant, and "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

principles, a court in this District recently dismissed a very similar FCA action brought by the same counsel on behalf of a different LLC, whose sole member was a former employee of the medical device company Medtronic, Inc., because that relator failed to meet the Fed. R. Civ. P. 9(b) pleading requirement with respect to its allegations of improper promotional activities and illegal kickbacks.  *See United States v. Medtronic, Inc.*, No. LA CV15-01212 JAK (ASx), 2017 U.S. Dist. LEXIS 153887 (C.D. Cal. Sept. 11, 2017).  As explained below, all of Relator's claims in this case suffer from similar deficiencies and should be dismissed.

## II.    COUNT VII SHOULD BE DISMISSED BECAUSE AN LLC DOES NOT HAVE STANDING TO BRING A RETALIATION CLAIM UNDER THE FALSE CLAIMS ACT

Relator's retaliation claim under 31 U.S.C. § 3730(h) should be dismissed because Relator is a limited liability corporation ("LLC") and only natural persons have standing to bring retaliation claims under 31 U.S.C. § 3730(h).  In *United States ex rel. Fryberger v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796 (N.D. Cal. 2014), the court considered whether an LLC could bring a retaliation claim.  After an exhaustive review of case law, the court determined that whether an LLC could qualify as an "employee, contractor, or agent" under Section 3730(h) was an issue of first impression.  *Id.* at 812.  The court first analyzed the text of the statute and concluded that because the statute provided for types of relief "directed to individual plaintiffs, not entities," such as "reinstatement with the same seniority," the statute, read as a whole, did not provide for claims brought by entities.  *Id.*  The court then reviewed the legislative history, noting a previous version of the statute had only allowed suits by "employees," but that Congress had amended the statute in 2009 to avoid unfairness to *individuals* who were independent contractors and thus not technically "employees" who could bring retaliation claims.  *Id.*  In dismissing the LLC's claims, the court concluded that "given the history behind the provision and the reason for its adoption, as well as the plain implication from the

-2-

relief section . . . Section 3730(h) entitles only individual employees, contractors, or agents" to sue for retaliation under Section 3730(h). *Id.* at 813.

Here, as in *Fryberger*, the Relator is an LLC, not a natural person. As such, and because there is no reason why this Court should depart from the thorough reasoning in *Fryberger*, Count VII should be dismissed with prejudice.

## III.   COUNTS I, II, AND III SHOULD BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD CLAIMS FOR VIOLATION OF THE FALSE CLAIMS ACT

To establish liability under the False Claims Act, a relator must prove the following four essential elements: "(1) a false or fraudulent claim; (2) that was material to the decision making process; (3) which defendant presented or caused to be presented to the United States for payment or approval; (4) with knowledge that the claim was false or fraudulent." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012). In addition, these elements must be established to the heightened pleading standard in Rule 9(b), which requires a relator to identify with "particularity" the "'who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotations omitted). Thus, to state an FCA claim against a pharmaceutical manufacturer based on allegations of improper promotion that satisfies Rule 9(b), a relator must allege, at a minimum, facts establishing the content of the relevant promotions, who provided those promotions, who received those promotions, and when they were received. *See, e.g., United States ex rel. Modglin v. DJO Global, Inc.*, 114 F. Supp. 3d 993, 1014-15 (C.D. Cal. 2015) (concluding that relator had failed to plead its FCA claim with particularity where, e.g., relator identified purportedly off-label promotional statements made only by generic, unnamed "personnel" at "trade conventions" without alleging the "name, location or date of those conventions"). Merely

providing examples or excerpts from the content of promotional materials alone is insufficient.  Rather, a relator "must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim, or at a minimum identify them by title and/or job responsibility."  *Id.* (citing *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 779 (S.D. Tex. 2010) (dismissing a complaint that identified neither "employees who engaged in off-label promotion nor specific physicians or hospitals who received the promotions")).

As explained below, despite that the principal of Relator was a Janssen salesperson for over ten years with access to internal documents and communications, Relator fails to allege any specific improper promotion relating to any of the 12 drugs identified in the Complaint.

## A.   Olysio

Relator asserts two theories of improper promotion related to Janssen's FDA-approved hepatitis C drug Olysio.  First, Relator alleges that the Janssen Defendants marketed Olysio as part of a "dual therapy" regimen in combination with another hepatitis C medication, Sovaldi (sofosbuvir), before that dual therapy regimen was approved by the FDA in November 2014.[3]  Second, Relator alleges that the Janssen

---

[3] The Complaint omits that in January 2014, only a few months after the FDA approval of Olysio, the American Association for the Study of Liver Disease ("AASLD") and the Infectious Disease Society of America ("IDSA") published updated HCV treatment guidelines recommending the "off-label" use of the Olysio + sofosbuvir combination.  *See* Liz Highleyman, *AASLD, IDSA & IAS-USA Announce New Hepatitis C Treatment Guidelines*, HIVANDHEPATITIS (Jan. 29, 2014), *available at* http://www.hivandhepatitis.com/hcv-treatment/hcv-treatment-guidelines/4497-aasld-and-idsa-announce-new-hepatitis-c-treatment-guidelines (announcing and summarizing guidelines).  *See also* AASLD/IDSA HCV Guidance Panel, *Hepatitis C Guidance: AASLD-IDSA Recommendations for Testing, Managing, and Treating Adults Infected With Hepatitis C Virus*, 62 HEPATOLOGY 932, 932-954 (2015), *available at* http://onlinelibrary.wiley.com/doi/10.1002/hep.27950/pdf (published version of guidelines).  As such, any alleged "promotion" of the off-label use of Olysio+sofosbuvir following the peer-reviewed publication recommending its use is protected by the First Amendment because it is truthful and non-misleading.  *See Celgene*, 226 F. Supp. 3d at 1038 n.3; *United States v. Caronia*, 703 F.3d 149, 160, 168 (2d Cir. 2012) (to avoid First Amendment concerns, the Food, Drug & Cosmetics Act, 21 U.S.C. § 301 *et seq.*, should be construed "as not prohibiting and

-4-

1   Defendants promoted the use of Olysio in allegedly unapproved patient types,

2   including patients with HIV, renal failure patients, pre- and post- liver transplant

3   patients, and patients on cholesterol medications (such as Lipitor).

4             **1.     Allegations Regarding Dual Therapy**

5        With only a handful of conclusory allegations and exhibits, Relator fails to

6   allege even the basic facts required to plead a scheme of off-label dual therapy

7   promotion, including the content of the purportedly fraudulent promotions, which

8   health care providers received such promotions, and who within the Janssen

9   Defendants delivered those promotions.

10       Relator instead focuses on the volume of prescriptions written or the cost of

11   those prescriptions for Olysio dual therapy without alleging a connection between

12   that prescribing activity and any conduct by the Janssen Defendants.  For instance,

13   Exhibit 6 is a news article from January 2015, which describes the profits Olysio

14   generated, but says nothing about the Janssen Defendants' promotional activities.

15   Similarly, in Paragraph 90, Relator alleges that it overheard Dr. Tram Tran, a liver

16   specialist, discussing the costs associated with re-treating patients who failed on

17   dual therapy, but provides no additional facts to explain how a physician's

18   statement at a medical conference about her treatment of her patients could possibly

19   relate to any alleged scheme by the Janssen Defendants to promote Olysio off-label.

20   The only alleged "promotional material" relating to dual therapy identified in the

21   Complaint is Exhibit 4, an undated, incomplete Janssen presentation.  Relator,

22   however, does not allege any facts regarding who made this presentation, who

23   received it, when it was presented, how it affected prescribing behavior, or, most

24   importantly, why it is allegedly false or misleading.  Notably, Relator does not even

25   allege that this presentation was created or presented before the FDA approved

26

27   criminalizing the truthful off-label promotion of FDA-approved prescription drugs").

28

1   Olysio-sofosbuvir dual therapy in November 2014.  Without such necessary

2   allegations, Relator's claim that the Janssen Defendants improperly marketed

3   Olysio for dual therapy use should be dismissed.

4              **2.      Allegations Regarding Improper Patient Sub-Types**

5              Relator's allegations regarding promotion of Olysio for use in unapproved

6   patient types are no more particular than its allegations about dual therapy and

7   should likewise be dismissed.  For example, Relator asserts that the scattershot,

8   undated slides identified as Exhibits 7, 8 and 9 are "speaker slide decks" that the

9   Janssen Defendants prepared for physician speakers to use to promote Olysio in

10  unapproved patient populations.  Relator, however, pleads nothing to explain what

11  about these materials is suggestive of any improper promotional scheme or how

12  they caused false claims to be presented for payment.  Perhaps most importantly,

13  Relator also fails to explain why these "slide decks" would be false or misleading

14  or how they are evidence of improper off-label promotion given that, since its

15  initial approval, the Olysio label always has recommended dose adjustments for

16  patients on statins (such as Lipitor), and the label always has stated that dose

17  adjustment was not required for patients with renal impairment.[4]

18             The Janssen internal e-mails Relator attaches are no more compelling or

19  particular.  In Paragraph 110 of the Complaint, for example, Relator cites to Exhibit

20  13 to support allegations that Janssen provided its sales representatives with

21  information to provide to doctors to promote Olysio off-label for use in patients

22  with HIV or renal failure and post-liver transplant.  The internal Janssen e-mail

23  attached as Exhibit 13, however, is a discussion marked "for education purposes

24  only and cannot be used in the field" about publicly available HCV treatment

25  _____

26         [4] *See* Olysio Labels, from November 22, 2013 to November 9, 2017, *available at*

27  https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=205123.

28

guidelines published by a medical organization.  Exhibit 13 makes no mention of off-label use in any of the referenced patient populations.

Similarly, in Paragraph 109 of the Complaint, Relator tries to use Exhibit 10, a Janssen internal e-mail describing contact with a particular physician, as evidence of an off-label marketing scheme.  The email, however, merely recounts a conversation between an Olysio sales representative and a physician during which the physician described that he prefers to use Olysio, rather than its competitor Harvoni, in patients on proton pump inhibitors.  Not only is this appropriate scientific exchange about a physician's medical judgment not suggestive of improper off-label marketing, Relator does not explain how it could even implicate off-label marketing because the Olysio label has always stated that "no clinically relevant drug-drug interaction is expected when Olysio is co-administered . . . with proton pump inhibitors."[5]

## B.   Xarelto, Levaquin, Nucynta, Nucynta ER, and Ultram ER

Relator also alleges that the Janssen Defendants improperly promoted Xarelto, Levaquin, Nucynta, Nucynta ER, and Ultram ER.[6]  Relator appears to assert five principal claims about these medications: (1) the Janssen Defendants promoted Xarelto for unapproved patient types; (2) the Janssen Defendants made misleading statements or omissions about the risk of bleeding associated with Xarelto; (3) the Janssen Defendants made misleading statements or omissions about the side effects of Levaquin; (4) the Janssen Defendants made misleading statements about the risk of addiction associated with Nucynta, Nucynta ER, and

[5] *See* Olysio Labels, from November 22, 2013 to November 9, 2017, *available at* https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=205123.

[6] Nucynta, Nucynta ER, and Ultram ER are all pain relief medications, and Relator either groups them together or treats them as essentially interchangeable in the Complaint.

1  Ultram ER; and (5) the Janssen Defendants promoted Nucynta for use over longer

2  periods of time than the 90-day regimen on the label.

3           As with the Olysio allegations, these claims should be dismissed because

4  Relator has failed to allege even the most basic facts required to establish a

5  plausible fraudulent scheme.  In each case, Relator has failed to allege which

6  employees prepared and delivered the promotional messages, who received these

7  promotional messages, when they received them, and why the promotions were

8  misleading.  Relator also has failed to allege any facts connecting any promotional

9  messages to actual prescribing behavior or the submission of a claim for

10 Government reimbursement.  Relator's exhibits, including promotional materials

11 for these products and internal e-mails between sales representatives, fail to

12 adequately supplement Relator's conclusory allegations.[7]  For example, Relator

13 attaches a physician call list, *see* Exhibit 18, but offers no explanation about how

14 such routine documents show any improper promotional activity by the Janssen

15 Defendants.  Similarly, Relator attaches undated promotional materials, *see, e.g.*,

16 Exhibits 14-17, but without additional and necessary factual allegations about the

17 documents' creation and allegedly improper use, Relator cannot establish the "who,

18 what, when, where, and how" required by Rule 9(b).  Finally, Relator's vague

19 allegations related to promotional practices to induce formulary decisions or

20 maximize Medicare and Medicaid billing, *see, e.g.,* Compl. ¶¶ 195-196, suffer from

21 the same deficiencies and fail to even address how any alleged misconduct led to

22 the submission of even one false claim for Government reimbursement.

23 Accordingly, the claims related to Xarelto, Levaquin, Nucynta, Nucynta ER, and

24 Ultram ER should be dismissed.

25

26 [7] In addition, each of Relator's allegations regarding promotion of Nucynta
   occurred before September 2010. (*See, e.g.,* Compl. at ¶¶ 111-121).  As discussed
27 in more detail in Part V, below, because this conduct occurred more than six years
   before Relator filed its complaint in September 2016, any claims arising from such
   allegations would be barred by the FCA's statute of limitations.

28

### C.  <u>Other Drugs Identified by Relator</u>

Relator identifies six additional drugs – AcipHex, Imbruvica, Invokana, Simponi, Remicade, and Elmiron – but makes no individualized allegations about any improper marketing of these drugs.  Given Relator's total failure to plead any facts whatsoever establishing the "who, what, when, where, and how" of any allegedly fraudulent scheme involving these drugs, these claims should be dismissed under Rule 9(b).

### D.  <u>Relator Has Failed to Allege Materiality As to Any of the 12 Drugs</u>

In *Universal Health Services, Inc. v. United States ex. rel. Escobar*, 579 U.S. __, 136 S. Ct. 1989, 2003 (2016), the Supreme Court made clear that materiality is an essential element of an implied certification claim under the False Claims Act. *Id.* at 2003.  In particular, in claims alleging "misbranding" or other improper promotion of pharmaceutical products, a relator must establish that the conduct at issue would have been material to the Government's decision to pay claims.  *See, e.g., United States ex rel. Petratos v. Genentech, Inc.*, 855 F. 3d 481 (3d Cir. 2017) (affirming the dismissal of relator's claims because even if the alleged misrepresentations related to the drug Avastin deceived prescribing physicians, the statements were not material to the Government's payment decision); *cf. United States ex rel. Ruckh v. Salus Rehab., LLC*, No. 8:11-cv-1303-T-23TBM, 2018 U.S. Dist. LEXIS 5148 (M.D. Fla. Jan. 11, 2018) (reversing jury verdict because relator did not offer any evidence of materiality, such as "a single threat of nonpayment" from the government).

Because Relator in this case has failed to allege any facts suggesting that the Janssen Defendants' conduct was material to the Government's decision to pay claims, Relator's claims should be dismissed.

### E.     Relator Failed to Allege Causation As to Any of the 12 Drugs

Relator's claims equally cannot survive because Relator has failed to plead facts demonstrating—or even plausibly suggesting—that the Janssen Defendants' conduct caused at least one false claim to be submitted to the government for payment.  *See Cafasso*, 637 F.3d at 1055 ("An actual false claim is the *sine qua non* of an FCA violation.").  While the Relator does not need to identify one specific false claim (as is required in some Circuits), Relator does need to identify "sufficiently detailed circumstantial evidence" of an actual false claim allegedly caused by the Janssen Defendants' conduct.  *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002-03 (9th Cir. 2002) (affirming judgment against relator for failure to establish a sufficiently particular false claim).  For example, in *Celgene*, the court reasoned that a relator could satisfy the causation element with, for example, reliable statistical evidence "that physicians who received more promotional contacts prescribed at a higher rate than those who received fewer contacts, and that claims for off-label prescriptions were presented to the Government in the hundreds of thousands following Celgene's promotional activities."  *Celgene*, 226 F. Supp. 3d at 1041.

Here, Relator has failed to allege any connection between Janssen Defendants' promotional activities and claims for payment submitted to the Government.  Indeed, Relator has not alleged even one specific example where Janssen Defendants' conduct caused a particular physician to write a particular prescription for an off-label use.  For example, in Paragraph 199, Relator alleges that Janssen Defendants brought together its Specialty Hepatology and Immunology unit to exploit off-label sales of Olysio, but nothing about what this unit did, who was in the unit, which physicians they supposedly contacted, and how they influenced actual prescribing decisions.  Nor has Relator provided reliable aggregate factual data about the prescribing behavior of physicians who received

the Janssen Defendants' supposedly improper promotions versus those who did not. Without such allegations, Relator's claims should be dismissed.

## IV.   COUNTS IV, V, AND VI SHOULD BE DISMISSED BECAUSE RELATOR FAILS TO STATE AN FCA CLAIM BASED ON ALLEGED ANTI-KICKBACK VIOLATIONS

To establish liability for a False Claims Act violation based on the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b)(2)(B), Relator must establish that the Janssen Defendants: "(1) knowingly and willfully ma[de] a payment (2) as inducement to the payee (3) to purchase or recommend for purchase (4) any good or service that is reimbursable under a federal healthcare program." *See Celgene*, 226 F. Supp. 3d at 1053.

Here, Relator's AKS-based claims should be dismissed because Relator does not allege sufficient particular facts giving rise to a plausible inference that the Janssen Defendants engaged in specific illegal conduct that was intended to—and actually did—induce physicians to prescribe the relevant products for patients covered by government insurance programs. *See Medtronic*, 2017 U.S. Dist. LEXIS 153887, at *31 ("It would be a violation of the statute to provide a financial benefit to a person with the specific intent to induce purchases or reimbursements by a government health care program."). Instead, Relator's allegations amount to little more than generic recitations of the legal standard and sparse facts describing appropriate promotional activities and interactions with physicians with no allegations—particular or otherwise—showing that these "benefits" were unlawful inducements. Specifically, Relator alleges no facts suggesting a causal relationship between the physicians who received these alleged benefits and their decisions to prescribe a particular drug.[8]

---

[8]As part of Count V, Relator also makes reference in Paragraph 258 to unlawful referrals under the Stark Act, 42 U.S.C. § 1395nn. Because Relator has made no allegations regarding referrals or inappropriate business relationships

-11-

In *Medtronic,* the court recently dismissed anti-kickback allegations in a similar False Claims Act complaint under Rule 9(b) because the *Medtronic* relator failed "to identify any physicians, or categories of them, who actually received payment in connection with decisions—in which they participated—to purchase or use of any of the Subject Devices." *Id.* at *31-32.  As in *Medtronic*, the Relator does not make any attempt to allege facts suggesting a link between the Janssen Defendants' conduct and any actual false claim.  Paragraph 6 in the Complaint is typical of many of Relator's allegations in this regard.  Relator makes a general allegation that unrestricted grants, lavish meals, and paid travel to prestigious vacation destinations were provided to physicians as part of a *quid pro quo* kickback scheme, but does not allege any specifics about who received these benefits, from whom, how any of the meals, speaker fees, or other alleged benefits were excessive or otherwise improper, or whether any physician was induced to prescribe one of the relevant products to a federally insured patient.  Instead, Relator devotes numerous pages to statements that on a certain date the Janssen Defendants paid a certain amount for a meal for a physician or "a doctor's office." *See, e.g,* Compl., at ¶¶ 146-165; Exs. 25-30.  There are no facts alleged to even suggest that the meals were extravagant.  The allegations do not assert any connection between the physician who received these meals and that physician's prescribing activity, his or her practice, or even the product for which the meals were allegedly intended as inducements.  Indeed, most of the meals-related allegations do not even include the names of the attendees, the name of the physician, or the physician's specialty, referring only generically to a "doctor's office." *See, e.g.,* Compl.,  at ¶¶ 151-165.  In short, there are no facts alleged that

between physicians and outpatient clinics or other organizations, Relator has failed to state a claim under this federal law.

1  would suggest these meals were anything other than typical promotional activities,

2  much less part of a *quid pro quo* arrangement.

3      Relator's allegations regarding speaker fees suffer from the same

4  deficiencies.  In *Celgene*, the court explained in detail the types of facts that could

5  support a claim that a pharmaceutical company's physician speaker program was

6  actually a cover for unlawful inducements.  There, the court reasoned that evidence

7  that the defendants had paid physicians $3,000 an hour as a speaker was not enough

8  for a reasonable jury to conclude that such a payment was an unlawful inducement

9  rather than a common and proper marketing expense.  *See Celgene*, 226 F. Supp. 3d

10 at 1054.  Rather, at a minimum, a relator would need some evidence showing that

11 the payments were out of line with industry standards *and* that there were at least

12 some facts indicating that the program was a sham, such as hosting speaker events

13 with no attendees, hosting speakers events at "inappropriate venues, such as

14 crowded sports bars, Hooters restaurants, and on fishing trips," or that "eligibility to

15 serve as a speaker was contingent on the number of prescriptions the physician

16 wrote." *Id.* at 1054-55.

17     Here, Relator does not allege any facts suggesting that the Janssen

18 Defendants' speaker's program was anything close to a "sham."  Relator's

19 description of the speaking events themselves are no more detailed than its

20 descriptions of meals, generally asserting only the physician's name, the date of a

21 speech, the amount he or she was paid for this speech (between $1,000 and $2,500),

22 and the general topic of the presentation.  *See* Compl. at ¶¶ 179-189; Exs. 36-46.

23 Further, Relator fails to allege specific facts suggesting that the Janssen

24 Defendants' tracked prescribing behavior and used it to select speakers.  For

25 example, in Paragraph 142, Relator insinuates that prescribing behavior was tied to

26 participation in the speaker's program.  But, Exhibit 19, cited to support this

27 allegation, specifically identifies that the criterion sales representatives are to

28 consider when recommending speakers are the speaker's reputation with other

physicians and favorability based on "programs or conversations" with those physicians—not their prescribing activity.  Likewise, in Paragraph 143, Relator mischaracterizes Exhibit 21 as evidence that "Defendants' business conduct had worsened" in regard to the speaker program because Janssen no longer wanted to use a speaker who told audience members at a company-sponsored event that he preferred a competitor drug, Harvoni.  It is no surprise that Janssen wanted to work with physicians who understood and used their medicines, but there are no specific facts alleged that eligibility to serve as a speaker was contingent on prescription volume.

Relator's claims about other alleged improper benefits provided to physicians are similarly unavailing.  For example, in Paragraph 202, Relator describes the Janssen Defendants' sponsorship of a table at a charity event hosted by the American Liver Foundation—a non-profit organization—as a kickback to a particular physician, Dr. Hassanein.  Nothing in Relator's allegation explains, however, how sponsoring a table at this charitable event could be even considered a benefit to Dr. Hassanein, much less how such a benefit was intended to and actually did influence him.  Given the complete absence of such required facts, Counts IV, V, and VI should be dismissed.

## V.   ADDITIONAL REASONS WHY THE COMPLAINT SHOULD BE DISMISSED

### A.   Relator's Claims Before September 2010 Are Barred by the False Claims Act's Statute of Limitations

Relator's claims before September 2010 should be dismissed with prejudice because they are barred by either the False Claims Act's six-year statute of limitations or ten-year statute of repose.  *See* 31 U.S.C. § 3731(b); *see also United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996).  Relator filed its Complaint in September 2016, therefore, any claims based on conduct that occurred before September 2010 should be dismissed with prejudice.

### B.   Relator's Claims Based On Publicly Disclosed Information

Relator's claims regarding average wholesale prices and Nucynta also should be dismissed based on the public disclosure bar of 31 U.S.C. § 3730(e)(4)(A).  This provision "deprives federal courts of subject matter jurisdiction when a Relator alleges fraud that already had been publicly disclosed." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 569 (9th Cir. 2016) (internal quotations and citations omitted).[9]

Relator's allegations related to schemes to increase drug prices through manipulation of average wholesale prices, *see* Compl. at ¶¶ 203-217, have been the subject of considerable press coverage and major federal class action litigation since at least 2007.  *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) (affirming the district court's opinion and explaining, in part, the history of the average wholesale price class action litigation).  Similarly, Relator's allegations regarding promotion of the pain relief medication Nucynta were previously disclosed in a lawsuit filed in 2014 by the City of Chicago against several drug manufacturers, including certain of the Janssen Defendants.  *See, e.g., City of Chicago v. Purdue Pharma L.P.,* No. 14 C 4361, 2015 U.S. Dist. LEXIS 60587 (N.D. Ill. May 8, 2015).

## VI.   RELATOR'S STATE LAW CLAIMS SHOULD BE DISMISSED

Relator also advances multiple claims arising under the false claims laws of various states, but each of those claims relies on a theory that is essentially identical to a claim under the federal False Claims Act.[10]  Therefore, for the same reasons

---

[9] Prior federal lawsuits asserting similar, even though not identical, facts may qualify as public disclosure.  *See United States ex rel. Solis v. Millennium Pharms., Inc.*, 95 F. Supp. 3d 1208, 1215 (W.D. Wash. 2015).

[10] In addition to claims under the False Claims Act laws of several states, Relator also makes claims under the laws of certain states, such as the California's Insurance Frauds Prevention Act, Ins. Code §§ 1871 *et seq.* ("CA IFPA") that allow relators to bring claims under nearly identical theories as a False Claims Act, but involve false claims made against private insurers rather than the government.  *See*

that the Relator's federal claims are not adequately pleaded, Relator's state law claims should also be dismissed for failure to state a claim.  *See Medtronic*, 2017 U.S. Dist. LEXIS 153887, at *34-35 (dismissing relator's state law claims because they failed on the same grounds as relator's federal claim).

In addition, because Relator has failed to state a claim arising under federal law, the Janssen Defendants respectfully urge this Court to decline to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3); *see also Modglin*, 114 F. Supp. 3d at 1028 (dismissing relator's federal FCA claim and declining to exercise supplemental jurisdiction).

## VII.   CONCLUSION

For the foregoing reasons, the Janssen Defendants respectfully request this Court dismiss all counts of Relator's Complaint.

Dated:  January 26, 2018

Respectfully submitted,
PEPPER HAMILTON LLP

By:*/s/ Jessica Russell*
Jessica Spradling Russell

Attorneys for Defendants
Janssen Pharmaceutica, N.V., Janssen
Pharmaceuticals, Inc., Janssen Research &
Development, LLC, and Ortho-McNeil

---

Compl. ¶¶ 25-36.  For the same reasons that Relator has failed to allege any false claims submitted for payment to the government, Relator has also failed to allege false claims submitted for payment to private insurers.

-16-