Michael A. Schwartz (admitted *pro hac vice*)
    E-mail: schwarma@pepperlaw.com
Erin Colleran (admitted *pro hac vice*)
    E-mail: collerane@pepperlaw.com
**PEPPER HAMILTON LLP**
Two Logan Square
Philadelphia, PA 19103-2799
Telephone: (215) 981-4494
Fax: (215) 981-4750

Jeffrey M. Goldman (SBN 233840)
    E-mail: goldmanj@pepperlaw.com
**PEPPER HAMILTON LLP**
4 Park Plaza, Suite 1200
Irvine, CA 92614-2524
Telephone: (949) 567-3547
Fax: (866) 728-3537

Jessica Spradling Russell (SBN 298558)
    E-mail: russellj@pepperlaw.com
**PEPPER HAMILTON LLP**
333 Twin Dolphin Drive, Suite 400
Redwood City, CA 94065-1434
Telephone: (650) 802-3600
Fax: (650) 802-3650

Attorneys for Defendants
Janssen Pharmaceutica, N.V.,
Janssen Pharmaceuticals, Inc.,
Janssen Research & Development, LLC,
Johnson & Johnson, and Ortho-McNeil

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA and THE STATES OF ARKANSAS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MISSOURI, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, VERMONT, VIRGINIA, WASHINGTON** | No.: 2:16-CV-06997-RGK-RAO<br><br>**DEFENDANTS JANSSEN PHARMACEUTICA, N.V., JANSSEN PHARMACEUTICALS, INC., JANSSEN RESEARCH & DEVELOPMENT, LLC, AND ORTHO-MCNEIL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT**<br><br>Date: April 9, 2018<br>Time: 9:00 a.m.<br>Place: Courtroom 850 |

1  AND THE DISTRICT OF COLUMBIA
2  *ex rel.* JANE DOE, an individual,

                                    Honorable R. Gary Klausner

3                          Plaintiffs,        [Filed concurrently with: Notice of
                                              Motion to Dismiss and Proposed
          v.                                  Order]
4

5  JANSSEN PHARMACEUTICAL N.V.,
   JANSSEN PHARMACEUTICALS,
6  INC., and JANSSEN RESEARCH &
   DEVELOPMENT, LLC, JOHNSON &
7  JOHNSON, and ORTHO-MCNEIL,

8                          Defendants.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   COUNTS I-VI SHOULD BE DISMISSED BECAUSE RELATOR JANE DOE IS BARRED FROM BRINGING THIS ACTION UNDER THE FCA'S FIRST-TO-FILE BAR, 31 U.S.C. § 3730(B)(5) ................................. 2

III.  COUNTS I, II, AND III SHOULD BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD UNDER THE FALSE CLAIMS ACT .................. 4

  A.   Olysio .............................................................................................. 5

    1.   Allegations Regarding Dual Therapy ............................. 6

    2.   Allegations Regarding Improper Patient Sub-Types ................... 7

    3.   Allegations Regarding Specialty Pharmacies ............................ 9

  B.   Xarelto, Levaquin, Nucynta, Nucynta ER, and Ultram ER ................ 10

  C.   Other Drugs Identified by Relator ...................................................... 11

  D.   Relator Has Failed to Allege Materiality As to Any of the 12 Drugs . 11

  E.   Relator Has Failed to Allege Causation As to Any of the 12 Drugs ... 12

IV.   COUNTS IV, V, AND VI SHOULD BE DISMISSED BECAUSE RELATOR FAILS TO STATE A FALSE CLAIMS ACT CLAIM BASED ON ALLEGED ANTI-KICKBACK VIOLATIONS ..................................... 13

V.    ADDITIONAL REASONS FOR DISMISSAL ............................................. 17

  A.   Relator Cannot Establish Any Basis to Proceed Anonymously ......... 17

  B.   Relator's Claims Before September 2010 Are Barred ........................ 18

  C.   Relator's Claims Based On Publicly Disclosed Information ............. 18

VI.   RELATOR'S STATE LAW CLAIMS SHOULD BE DISMISSED ........... 19

VII.  CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*City of Chicago v. Purdue Pharma L.P.*,
   No. 14 C 4361, 2015 U.S. Dist. LEXIS 60587 (N.D. Ill. May 8,
   2015) ............................................................................................................. 19

*Doe v. UNUM Life Ins. Co. of Am.*,
   164 F. Supp. 3d 1140 (N.D. Cal. 2016) ...................................................... 18

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir.
   2000) ............................................................................................................. 18

*Hooper v. Lockheed Martin Corp.*,
   688 F.3d 1037 (9th Cir. 2012) ...................................................................... 4

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) ......................................................................... 19

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ......................................................................... 1

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*,
   314 F.3d 995 (9th Cir. 2002) ....................................................................... 12

*United States ex rel. Bennett v. Medtronic, Inc.*,
   747 F. Supp. 2d 745 (S.D. Tex. 2010) .......................................................... 5

*United States ex rel. Brown v. Celgene*,
   226 F. Supp. 3d 1032 (C.D. Cal. 2016) ...................................... 6, 7, 13, 14, 15, 16

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ................................................................. 5, 12

*United States ex rel. Fryberger v. Kiewit Pac. Co.*,
   41 F. Supp. 3d 796 (N.D. Cal. 2014) ............................................................ 4

*United States ex rel. Hyatt v. Northrop Corp.*,
   91 F.3d 1211 (9th Cir. 1996) ....................................................................... 18

*United States ex rel. Lager v. CSL Behring, LLC, et al.*,
   No. 4:14-CV-841CEJ, 2016 WL 233245 (E.D. Mo. 2016) ........................ 19

*United States ex rel. Little v. Triumph Gear Sys.*,
  870 F.3d 1242 (10th Cir. 2017) ................................................................. 1, 3, 4

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
  243 F.3d 1181 (9th Cir. 2001) .................................................................... 1, 2

*United States ex rel. Manion v. St. Luke's Reg'l Med. Ctr., Ltd.*,
  No. CV 06-498-S-EJL, 2008 U.S. Dist. LEXIS 25719 (D. Idaho
  Mar. 31, 2008) ......................................................................................... 3, 4

*United States ex rel. Marion v. Head Coll., LLC*,
  No. 5:12-CV-02067, 2015 U.S. Dist. LEXIS 133380 (N.D. Cal.
  Sept. 30, 2015) ............................................................................................ 4

*United States ex rel. Mateski v. Raytheon Co.*,
  816 F.3d 565 (9th Cir. 2016) ..................................................................... 18

*United States ex rel. Modglin v. DJO Global,*
  Inc., 114 F. Supp. 3d 993, 1014 (C.D. Cal. 2015) ................................... 5, 20

*United States ex rel. Petratos v. Genentech, Inc.*,
  855 F.3d 481 (3d Cir. 2017) ...................................................................... 11

*United States ex. rel. Ruckh v. Salus Rehab., LLC*,
  No. 8:11-cv-1303-T-23TBM, 2018 U.S. Dist. LEXIS 5148 (M.D.
  Fla. Jan. 11, 2018) ..................................................................................... 12

*United States ex rel. Solis v. Millennium Pharms., Inc.*,
  95 F. Supp. 3d 1208 (W.D. Wash. 2015) ................................................... 19

*United States v. Caronia*,
  703 F.3d 149 (2d Cir. 2012) ........................................................................ 6

*United States v. Medtronic, Inc.*,
  No. LA CV15-01212 JAK (ASx), 2017 U.S. Dist. LEXIS 153887
  (C.D. Cal. Sept. 11, 2017) ................................................................. 2, 14, 20

*Universal Health Services, Inc. v. United States ex. rel. Escobar*,
  136 S. Ct. 1989 (2016) ............................................................................... 11

**STATUTES**

*28 U.S.C. § 1367(c)(3)* .................................................................................. 20

-iii-

*31 U.S.C. § 3730(b)(5)* ................................................................................ 1, 2, 3, 4

*31 U.S.C. § 3730(e)(4)(A)* ................................................................................ 18

*31 U.S.C. § 3730(h)* ................................................................................ 1, 4

*31 U.S.C. § 3731(b)* ................................................................................ 18

*42 U.S.C. § 1320a-7b(b)(2)(B)* ................................................................................ 13

*California Insurance Frauds Prevention Act, Ins. Code §§ 1871 et seq.* ............... 19

*False Claims Act, 31 U.S.C. § 3729-3733* ................................................ passim

*Food, Drug & Cosmetics Act, 21 U.S.C. § 301, et seq.* ........................................... 6

*Stark Act, 42 U.S.C. § 1395nn* ................................................................ 14

**OTHER AUTHORITIES**

U.S. Const. amend I ................................................................................ 6

Fed. R. Civ. P. 9(b) ................................................................ 1, 2, 5, 9, 11, 14

*AASLD, IDSA & IAS-USA Announce New Hepatitis C Treatment
Guidelines*, HIV AND HEPATITIS (Jan. 29, 2014), *available at*
http://www.hivandhepatitis.com/hcv-treatment/hcv-treatment-
guidelines/4497-aasld-and-idsa-announce-new-hepatitis-c-
treatment-guidelines ................................................................................ 6

AASLD/IDSA HCV Guidance Panel, *Hepatitis C Guidance: AASLD-
IDSA Recommendations for Testing, Managing, and Treating
Adults Infected With Hepatitis C Virus*, 62 HEPATOLOGY 932,
932-954 (2015), *available at*
http://onlinelibrary.wiley.com/doi/10.1002/hep.27950/pdf ................................ 6

Olysio Labels, from November 22, 2013 to November 9, 2017,
*available at*
https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=o
verview.process&varApplNo=205123 ................................................................ 8

## I.    INTRODUCTION

This Court no longer has subject matter jurisdiction to consider the False Claims Act ("FCA") allegations set forth in the First Amended Complaint.  By substituting Jane Doe for the original Relator Alexander Volkoff, LLC, counsel for Relator deprived this Court of jurisdiction because of the "first-to-file bar."  Under 31 U.S.C. § 3730(b)(5), federal courts have subject matter jurisdiction only over FCA claims brought by the original *qui tam* relator or the Government.  *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001) (holding that the FCA's first-to-file bar is a jurisdictional rule that is "exception free"); *United States ex rel. Little v. Triumph Gear Sys.*, 870 F.3d 1242, 1251-52 (10th Cir. 2017) (reversing the district court and holding that substitution of the original *qui tam* relator with new relators required the court to dismiss the FCA complaint with prejudice).  As Jane Doe is neither the first-to-file nor the Government, her claims must be dismissed with prejudice.[1]

Even if these jurisdictional defects did not require dismissal, the First Amended Complaint must be dismissed because despite additional allegations and exhibits, Relator still fails to state FCA claims on which relief can be granted.  In the First Amended Complaint, Relator asserts that the Janssen Defendants[2] engaged in a laundry list of allegedly inappropriate promotional activities, including off-label marketing and paying kickbacks, arising out of the sale of 12 different drugs over a period of more than a decade.  Although the Relator purports to be a former Janssen salesperson with "personal experiences and industry insider information,"

---

[1] While the first-to-file bar does not apply to her employment retaliation claim in Count VII, as explained in greater detail in Section V.A, all of Relator's claims, including her retaliation claims under 31 U.S.C. § 3730(h), should be dismissed because she cannot establish any basis to proceed anonymously.

[2] As explained in greater detail in a separate motion filed by co-defendant Johnson & Johnson, Relator's claims should be dismissed because Relator has failed to plead individualized allegations against each defendant, and "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

the First Amended Complaint contains nothing more than a patchwork of disconnected allegations, most of which are bald recitations of the legal standards and none of which are sufficient to state a claim under the FCA.  Most significantly, Relator fails to plead facts establishing that Janssen's conduct caused physicians to write off-label prescriptions or was material to the Government's decision to pay claims, two necessary elements for a Relator to plead and establish liability under the FCA.  Rather than curing these pleading defects, the First Amended Complaint's allegations and attached exhibits establish nothing more than that the Janssen Defendants engaged in lawful marketing and business development activities typical of a pharmaceutical manufacturer, not a far reaching scheme to violate federal law.  Indeed, a court in this District recently dismissed a very similar FCA action brought by the same counsel on behalf of a different relator because that relator failed to meet the Fed. R. Civ. P. 9(b) pleading requirement with respect to its allegations of improper promotional activities and illegal kickbacks.  *See United States v. Medtronic, Inc.*, No. LA CV15-01212 JAK (ASx), 2017 U.S. Dist. LEXIS 153887,*31-33 (C.D. Cal. Sept. 11, 2017).  As explained below, all of Relator's FCA claims in this case suffer from similar deficiencies and should be dismissed.

## II.   COUNTS I-VI SHOULD BE DISMISSED BECAUSE RELATOR JANE DOE IS BARRED FROM BRINGING THIS ACTION UNDER THE FCA'S FIRST-TO-FILE BAR, 31 U.S.C. § 3730(B)(5)

Counts I-VI of Relator Jane Doe's First Amended Complaint should be dismissed with prejudice because this Court lacks jurisdiction to consider these claims because of the FCA's "first-to-file" bar, 31 U.S.C. § 3730(b)(5).  This jurisdictional rule, which is "exception free" in the Ninth Circuit, divests the federal courts of subject matter jurisdiction over intervening or related FCA complaints filed by any person other than the original relator or the Government subsequent to the filing of the initial *qui tam* complaint.  *See Lujan*, 243 F.3d at 1183 (holding

1    that "an exception-free, first-to-file bar" conforms with Congress's intent to prevent

2    duplicate and parasitic lawsuits).  The first-to-file bar prevents not only the filing of

3    a separate complaint in a "related action," but also prevents a new relator "from

4    intervening in any way."  *See United States ex rel. Manion v. St. Luke's Reg'l Med.*

5    *Ctr., Ltd.*, No. CV 06-498-S-EJL, 2008 U.S. Dist. LEXIS 25719, at *18 (D. Idaho

6    Mar. 31, 2008).

7         The logic and strict application of this rule were recently analyzed at length

8    and reaffirmed by the Tenth Circuit in a case with a procedural posture nearly

9    identical to this case.  In *Little*, relator Joe Blyn filed the original sealed FCA

10   complaint.  Later, Relator's counsel filed an amended complaint that removed any

11   mention of Blyn and named Donald Little and Kurosh Motaghed as the sole

12   relators.  The defendant moved to dismiss, arguing that the amended complaint

13   filed by Little and Motaghed was barred by the FCA's first-to-file rule because they

14   were "person[s]" who "intervene[d]" in Blyn's actions.  The district court denied

15   defendant's motion, but certified the question to the Tenth Circuit as an

16   interlocutory appeal.  After thorough review, the Tenth Circuit reversed the district

17   court, finding that the FCA complaint was barred in its entirety by the FCA's first-

18   to-file bar.

19        The Tenth Circuit based its decision on the text of Section 3730(b)(5), which

20   states that once an FCA complaint has been filed by a private party, "no person

21   other than the government may intervene or bring a related action based on the facts

22   underlying the pending action."  Because Little and Motaghed were "persons other

23   than the government" who "intervene[d]" in Blyn's FCA action, their amended

24   complaint ran afoul of the FCA's first-to-file bar.  *Little*, 870 F.3d at 1248.

25        Here, the application of the first-to-file bar to Relator Jane Doe's First

26   Amended Complaint is straightforward.  The original *qui tam* complaint in this

27   action was filed on September 16, 2016 by Relator Alexander Volkoff, LLC.

28   Alexander Volkoff, LLC remained the sole relator in this matter until February 16,

-3-

1    2018, when the First Amended Complaint was filed.  The First Amended

2    Complaint removed Alexander Volkoff, LLC as a relator and substituted Jane Doe,

3    an anonymous natural person, as the sole relator.[3]  Thus, as the second-to-file in this

4    case, this Court does not have jurisdiction to consider Jane Doe's FCA claims, and

5    those claims must be dismissed.

6         Furthermore, dismissal with prejudice is required because a second amended

7    complaint *renaming* Alexander Volkhoff LLC will not cure the fatal jurisdictional

8    deficiencies in this case.  In *Little,* because the court concluded that it was without

9    jurisdiction over the action, Little and Motaghed could not amend their complaint

10   to rename Blyn as a relator.  *Id.* at 1251; *see also United States ex rel. Marion v.*

11   *Head Coll., LLC*, No. 5:12-CV-02067, 2015 U.S. Dist. LEXIS 133380, *3-4 (N.D.

12   Cal. Sept. 30, 2015) (rejecting an attempt to add original relator and dismissing

13   amended complaint with prejudice); *Manion*, 2008 U.S. Dist. LEXIS 25719, at *18-

14   *19 (dismissing additional relator's FCA claims completely and noting that the

15   Ninth Circuit applies a broad, "plain meaning" interpretation the meaning of

16   "intervene" to Section 3730(b)(5)).

17   **III.   COUNTS I, II, AND III SHOULD BE DISMISSED FOR FAILURE TO**

18   **ADEQUATELY PLEAD UNDER THE FALSE CLAIMS ACT**

19        To establish liability under the False Claims Act, a relator must prove the

20   following four essential elements: "(1) a false or fraudulent claim; (2) that was

21   material to the decision making process; (3) which defendant presented or caused to

22   be presented to the United States for payment or approval; (4) with knowledge that

23   the claim was false or fraudulent."  *Hooper v. Lockheed Martin Corp.*, 688 F.3d

24   1037, 1047 (9th Cir. 2012).  These elements must be established to the heightened

25

26   _____
     [3] In response to the original complaint, the Janssen Defendants moved to
27   dismiss Relator Alexander Volkoff, LLC's False Claims Act retaliation claims
     under 31 U.S.C. § 3730(h) because only natural persons can bring retaliation claims
28   under Section 3730(h).  *See United States ex rel. Fryberger v. Kiewit Pac. Co.,* 41
     F. Supp. 3d 796, 813 (N.D. Cal. 2014).

-4-

pleading standard in Fed. R. Civ. P. 9(b), which requires a relator to identify with "particularity" the "'who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotations omitted).

Thus, to state an FCA claim involving the improper promotion of a pharmaceutical product, a relator must allege, at a minimum, facts establishing the content of the relevant promotions, who provided those promotions, who received those promotions, and when they were received. *See, e.g., United States ex rel. Modglin v. DJO Global, Inc.,* 114 F. Supp. 3d 993, 1014-15 (C.D. Cal. 2015) (concluding that relator had failed to plead its FCA claim with particularity where, e.g., relator identified purportedly off-label promotional statements made only by generic, unnamed "personnel" at "trade conventions" without alleging the "name, location or date of those conventions").  Merely providing examples or excerpts from promotional materials alone is insufficient.  Rather, a relator "must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim, or at a minimum identify them by title and/or job responsibility." *Id.* (citing *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 779 (S.D. Tex. 2010) (dismissing a complaint that identified neither "employees who engaged in off-label promotion nor specific physicians or hospitals who received the promotions")).

As explained below, despite that Relator was a Janssen salesperson for over ten years with access to internal documents and communications, Relator fails to allege any specific improper promotion relating to any of the 12 drugs identified in the First Amended Complaint.

### A.   <u>Olysio</u>

Relator asserts three theories of allegedly improper promotion related to Janssen's FDA-approved hepatitis C drug Olysio, none of which are sufficient to

-5-

state a claim.  First, Relator alleges that the Janssen Defendants marketed Olysio as part of a "dual therapy" regimen in combination with another hepatitis C medication, Sovaldi (sofosbuvir), before that dual therapy regimen was approved by the FDA in November 2014.[4]  Second, Relator alleges that the Janssen Defendants promoted the use of Olysio in allegedly unapproved patient types, including patients with HIV, renal failure patients, pre- and post-liver transplant patients, and patients on cholesterol medications (such as Lipitor).  Finally, Relator alleges that the Janssen Defendants engaged in off-label promotion through inappropriate relationships with specialty pharmacies.

## 1.   Allegations Regarding Dual Therapy

Relator fails to allege even the basic facts required to plead a scheme of off-label dual therapy promotion.  In fact, the majority of Relator's factual allegations regarding Olysio do not even relate to promotion of Olysio.  That is, rather than focus on the facts tending to establish the conduct of the Janssen Defendants, Relator focuses on lawful physician conduct, specifically that physicians were writing prescriptions for Olysio dual therapy.  For instance, newly added Exhibits

[4] The First Amended Complaint omits that in January 2014, only a few months after the FDA approval of Olysio, the American Association for the Study of Liver Disease ("AASLD") and the Infectious Disease Society of America ("IDSA") published updated HCV treatment guidelines recommending the "off-label" use of the Olysio + sofosbuvir combination.  *See* Liz Highleyman, *AASLD, IDSA & IAS-USA Announce New Hepatitis C Treatment Guidelines*, HIV AND HEPATITIS (Jan. 29, 2014), *available at* http://www.hivandhepatitis.com/hcv-treatment/hcv-treatment-guidelines/4497-aasld-and-idsa-announce-new-hepatitis-c-treatment-guidelines (announcing and summarizing guidelines).  *See also* AASLD/IDSA HCV Guidance Panel, *Hepatitis C Guidance: AASLD-IDSA Recommendations for Testing, Managing, and Treating Adults Infected With Hepatitis C Virus*, 62 HEPATOLOGY 932, 932-954 (2015), *available at* http://onlinelibrary.wiley.com/doi/10.1002/hep.27950/pdf (published version of guidelines).  As such, any alleged "off-label promotion" of the dual therapy of Olysio+sofosbuvir following the peer-reviewed publication recommending its use is protected by the First Amendment because it is truthful and non-misleading.  *See United States ex rel. Brown v. Celgene*, 226 F. Supp. 3d 1032, 1038 n.3 (C.D. Cal. 2016); *United States v. Caronia*, 703 F.3d 149, 160, 168 (2d Cir. 2012) (to avoid First Amendment concerns, the Food, Drug & Cosmetics Act should be construed "as not prohibiting and criminalizing the truthful off-label promotion of FDA-approved prescription drugs").

16, 17 and 43, internal Janssen documents, describe Janssen contact with physicians who self-reported prescribing Olysio dual therapy.  In an attempt to show a motive for improper promotion, Relator attached Exhibit 10, a news article from January 2015, which describes the profits Olysio generated, but says nothing about the Janssen Defendants' promotional activities.  Contrary to Relator's insinuations, such facts are wholly insufficient to state a claim under the FCA for improper promotion because "it is perfectly lawful for physicians to prescribe drugs for off-label use." *Celgene*, 226 F. Supp. 3d at 1038 n.3.  To survive a motion to dismiss, Relator must plead facts tending to show that the Janssen Defendants engaged in improper promotion, and this she has not done.

In the few instances where Relator has provided alleged "sales and marketing materials" relating to dual therapy, she fails to provide any further facts or explanation as to how these materials suggest a fraudulent scheme.  For example, Exhibit 8 appears to be an undated, incomplete Janssen presentation.  Relator, however, does not allege any facts about who made this presentation, the audience, when it was presented, how it affected prescribing behavior, or, most importantly, why it is allegedly false or misleading.  Without such necessary allegations, Relator's claim that the Janssen Defendants improperly marketed Olysio for dual therapy use should be dismissed.

## 2. Allegations Regarding Improper Patient Sub-Types

Relator's allegations regarding promotion of Olysio for use in unapproved patient types are no more particular than her allegations about dual therapy and should likewise be dismissed.  For example, Relator asserts that the scattershot, undated slides identified as Exhibits 11, 12 and 13 are "speaker slide decks" that the Janssen Defendants prepared for physician speakers to use to promote Olysio in unapproved patient populations.  Relator, however, pleads nothing to explain what about these materials is suggestive of any improper promotional scheme or how they caused false claims to be presented for payment.  Perhaps most importantly,

-7-

Relator fails to explain why these "slide decks" would be false or misleading or how they are evidence of improper off-label promotion given that, since its initial approval, the Olysio label always has recommended dose adjustments for patients on statins (such as Lipitor), and the label always has stated that dose adjustment was not required for patients with renal impairment.[5]

The Janssen internal e-mails Relator attached are no more compelling or particular.  In Paragraph 135, for example, Relator cites to Exhibit 21 to support allegations that Janssen provided its sales representatives with information to provide to doctors to promote Olysio off-label for use in patients with HIV or renal failure and post-liver transplant.  The internal Janssen e-mail attached as Exhibit 21, however, is a discussion marked "for education purposes only and cannot be used in the field" about publicly available HCV treatment guidelines published by a medical organization.  Exhibit 21 makes no mention of off-label use in any of the referenced patient populations.

Similarly, in Paragraph 134, Relator tries to use Exhibit 20, a Janssen internal e-mail describing contact with a particular physician, as evidence of an off-label marketing scheme.  The email, however, merely recounts a conversation between an Olysio sales representative and a physician during which the physician described that he prefers to use Olysio, rather than its competitor Harvoni, in patients on proton pump inhibitors.  Not only is this appropriate scientific exchange about a physician's medical judgment not suggestive of improper off-label marketing, Relator does not explain how it could even implicate off-label marketing because the Olysio label has always stated that "no clinically relevant drug-drug interaction is expected when Olysio is co-administered . . . with proton pump inhibitors."[6]

---

[5] *See* Olysio Labels, from November 22, 2013 to November 9, 2017, *available at* https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&varApplNo=205123.

[6] *See* Olysio Labels, from November 22, 2013 to November 9, 2017, *available at*

### 3.  <u>Allegations Regarding Specialty Pharmacies</u>

Finally, Relator's vague allegations that the Janssen Defendants promoted the off-label use of Olysio through its relationships with specialty pharmacies also fail to state the basic facts of a fraudulent scheme required by Rule 9(b).  Indeed, it is not even clear how Relator's allegations establish a scheme of any kind, much less an unlawful one.  Specialty pharmacies are a common and legitimate part of the pharmaceutical supply chain, especially for complex treatment regimens like Olysio, and Relator fails to tie together her disparate facts into a theory of unlawful conduct.  For example, in Paragraphs 136 and 137, Relator alleges, generically, that Janssen sales representatives had contact with specialty pharmacies, some of which distributed both Simponi and Olysio, but does not explain how these contacts were in any way improper much less part of a fraudulent scheme.  Similarly, in Paragraphs 132 and 133, Relator alleges, with no specific facts, that Janssen sales representatives developed relationships with sales representatives from specialty pharmacies and that those specialty pharmacy representatives were "much more aggressive" in promoting Olysio dual therapy than Janssen sales representatives, but does not provide any specific facts tending to explain how these relationships were improper or why the Janssen Defendants are responsible for the conduct— improper or otherwise—of non-Janssen employees. Likewise, in Paragraph 138, Relator alleges that Exhibit 23 reveals collaboration between specialty pharmacies and Janssen to market Olysio off-label.  A close review of Exhibit 23, however, reveals no such suggestion.  In fact, Exhibit 23 indicates that specialty pharmacy Senderra had only been proposed as a potential invitee with the objective to "increase effective and compliant collaboration with your SPP partners."  How potential "compliant collaboration" could be part of an unlawful scheme is not explained and, therefore, is insufficient to support FCA liability for Janssen's

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&varApplNo=205123.

-9-

JANSSEN DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT

1  promotion of Olysio.

2  **B.    Xarelto, Levaquin, Nucynta, Nucynta ER, and Ultram ER**

3  Relator also alleges that the Janssen Defendants improperly promoted

4  Xarelto, Levaquin, Nucynta, Nucynta ER, and Ultram ER.[7]  Relator appears to

5  assert five principal claims about these medications: (1) the Janssen Defendants

6  promoted Xarelto for unapproved patient types; (2) the Janssen Defendants made

7  misleading statements or omissions about the risk of bleeding associated with

8  Xarelto; (3) the Janssen Defendants made misleading statements or omissions about

9  the side effects of Levaquin; (4) the Janssen Defendants made misleading

10  statements about the risk of addiction associated with Nucynta, Nucynta ER, and

11  Ultram ER; and (5) the Janssen Defendants promoted Nucynta for use over longer

12  periods of time than the 90-day regimen in the label.

13  As with the Olysio allegations, Relator has failed to allege even the most

14  basic facts required to establish a plausible fraudulent scheme.  For each drug,

15  Relator has failed to allege which employees prepared and delivered the

16  promotional messages, who received these promotional messages, when they

17  received them, and why the promotions were misleading.  Relator also has failed to

18  allege any facts connecting any promotional messages to actual prescribing

19  behavior or the submission of a claim for Government reimbursement.  Relator's

20  exhibits, including promotional materials for these products and internal e-mails

21  between sales representatives, fail to adequately supplement Relator's conclusory

22  allegations.[8]  For example, Relator attached a physician call list, *see* Exhibit 39, but

23  _____

24  [7] Nucynta, Nucynta ER, and Ultram ER are all pain relief medications, and Relator either groups them together or treats them as essentially interchangeable in the First Amended Complaint.

25  [8] In addition, the majority of Relator's allegations regarding promotion of

26  Nucynta or Ultram ER occurred before September 2010. (*See, e.g.,* FAC at ¶¶ 74, 81, 84, and 85).  As discussed in more detail in Part V.B., below, because this

27  conduct occurred more than six years before Relator filed its complaint in September 2016, any claims arising from such allegations would be barred by the

28  FCA's statute of limitations.

1  offers no explanation about how such routine documents show any improper
2  promotional activity by the Janssen Defendants.  Similarly, Relator attached
3  undated promotional materials, *see, e.g.*, Exhibits 14-17, but without additional and
4  necessary factual allegations about the documents' creation and allegedly improper
5  use, Relator cannot establish the "who, what, when, where, and how" required by
6  Rule 9(b).  Accordingly, the claims related to Xarelto, Levaquin, Nucynta, Nucynta
7  ER, and Ultram ER should be dismissed.

8       **C.**    <u>**Other Drugs Identified by Relator**</u>

9       Relator identifies six additional drugs – Aciphex, Imbruvica, Invokana,
10  Simponi, Remicade, and Elmiron – but makes either none or only glancing
11  individualized allegations about any improper marketing of these drugs.[9]  Given
12  Relator's failure to plead any specific facts establishing the "who, what, when,
13  where, and how" of any allegedly fraudulent scheme involving these drugs, these
14  claims should be dismissed under Rule 9(b).

15       **D.**    <u>**Relator Has Failed to Allege Materiality As to Any of the 12 Drugs**</u>
16       In *Universal Health Services, Inc. v. United States ex. rel. Escobar*, 136 S.
17  Ct. 1989 (2016), the Supreme Court made clear that materiality is an essential
18  element of an implied certification claim under the False Claims Act.  *Id.* at 2003.
19  In particular, in claims alleging improper promotion of pharmaceutical products, a
20  relator must establish that the conduct at issue would have been material to the
21  Government's decision to pay claims.  *See, e.g., United States ex rel. Petratos v.*
22  *Genentech, Inc.*, 855 F. 3d 481, 490 (3d Cir. 2017) (affirming the dismissal of
23  relator's claims because even if the alleged misrepresentations related to the drug
24  Avastin deceived prescribing physicians, the statements were not material to the

---

[9] In Paragraph 162, Relator alleges that Janssen sales representatives themselves filled fraudulent prescriptions for Aciphex to increase their sales numbers.  These allegations fail to identify any particular representative, doctor, or prescription that was actually filled in this manner or when this alleged misconduct occurred, and, thus, fail to state a claim under Rule 9(b).

Government's payment decision); *cf. United States ex. rel. Ruckh v. Salus Rehab., LLC*, No. 8:11-cv-1303-T-23TBM, 2018 U.S. Dist. LEXIS 5148, *5 (M.D. Fla. Jan. 11, 2018) (reversing jury verdict because relator did not offer any evidence of materiality, such as "a single threat of nonpayment" from the Government).

Relator's vague allegations related to promotional practices to induce formulary decisions or maximize Medicare and Medicaid billing fail to address how any alleged misconduct was material to the Government reimbursement decision. For example, in Paragraph 200, Relator mischaracterizes Exhibit 42 as "part of a campaign to promote Olysio to Medicare patients." Nothing in Exhibit 42, however, indicates a plan to promote Olysio specifically to Medicare patients; insofar as the document describes insurance coverage at all, it speaks to all types of insurers. Likewise, in Paragraph 267, Relator alleges, without reference to specifics, that the Janssen Defendants targeted their meals and promotional activities at doctors based on volume of Medicare and Medicaid patients, but again fails to allege that this behavior caused doctors to change their prescribing behavior or that this behavior impacted Government reimbursement decisions.

Because Relator in this case has failed to allege any facts suggesting that the Janssen Defendants' conduct was material to the Government's decision to pay claims, Relator's claims should be dismissed.

### E.     Relator Has Failed to Allege Causation As to Any of the 12 Drugs

Relator's claims equally cannot survive because Relator has failed to plead facts demonstrating—or even plausibly suggesting—that the Janssen Defendants' conduct caused false claims to be submitted to the government for payment. *See Cafasso*, 637 F.3d at 1055 ("An actual false claim is the *sine qua non* of an FCA violation."). While Relator does not need to identify one specific false claim (as is required in some Circuits), Relator does need to identify "sufficiently detailed circumstantial evidence" of an actual false claim allegedly caused by the Janssen Defendants' conduct. *See United States ex rel. Aflatooni v. Kitsap Physicians*

*Serv.*, 314 F.3d 995, 1002-03 (9th Cir. 2002) (affirming judgment against relator for failure to establish a sufficiently particular false claim).  For example, in *Celgene*, the court reasoned that a relator could satisfy the causation element with, for example, reliable statistical evidence "that physicians who received more promotional contacts prescribed at a higher rate than those who received fewer contacts, and that claims for off-label prescriptions were presented to the Government in the hundreds of thousands following Celgene's promotional activities." *Celgene,* 226 F. Supp. 3d at 1041.

Here, Relator has failed to allege any connection between the Janssen Defendants' promotional activities and claims for payment submitted to the Government.  Relator has not alleged even one specific example where the Janssen Defendants' conduct caused a particular physician to write a particular prescription for an off-label use.  For example, in Paragraph 224, Relator alleges that the Janssen Defendants brought together its Specialty Hepatology and Immunology unit to exploit off-label sales of Olysio, but nothing about what this unit did, who was in the unit, which physicians they supposedly contacted, and how they influenced actual prescribing decisions.  Further, Relator's newly added allegations in Paragraph 269 related to sales strategy and prescription volume tracking are conclusory and similarly fail to establish that any misleading promotional message caused the submission of a false claim.  Indeed, Relator has not provided any reliable aggregate factual data about the prescribing behavior of physicians who received the Janssen Defendants' supposedly improper promotions versus those who did not.  Without such allegations, Relator's claims should be dismissed.

## IV.   COUNTS IV, V, AND VI SHOULD BE DISMISSED BECAUSE RELATOR FAILS TO STATE A FALSE CLAIMS ACT CLAIM BASED ON ALLEGED ANTI-KICKBACK VIOLATIONS

To establish liability for an FCA violation based on the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b)(2)(B), Relator must establish that the

-13-

Janssen Defendants: "(1) knowingly and willfully ma[de] a payment (2) as inducement to the payee (3) to purchase or recommend for purchase (4) any good or service that is reimbursable under a federal healthcare program." *See Celgene*, 226 F. Supp. 3d at 1053.

Here, Relator's AKS-based claims should be dismissed because Relator does not allege sufficient particular facts giving rise to a plausible inference that the Janssen Defendants engaged in specific illegal conduct that was intended to—and actually did—induce physicians to prescribe the relevant products for patients covered by government insurance programs. *See Medtronic*, 2017 U.S. Dist. LEXIS 153887, at *31 ("It would be a violation of the statute to provide a financial benefit to a person with the specific intent to induce purchases or reimbursements by a government health care program."). Instead, Relator's allegations amount to little more than generic recitations of the legal standard and sparse facts describing appropriate promotional activities and interactions with physicians with no allegations—particular or otherwise—showing that these "benefits" were unlawful inducements. Specifically, Relator alleges no facts suggesting a causal relationship between the physicians who received these alleged benefits and their decisions to prescribe a particular drug.[10]

In *Medtronic,* the court recently dismissed anti-kickback allegations in a similar FCA complaint under Rule 9(b) because the *Medtronic* relator failed "to identify any physicians, or categories of them, who actually received payment in connection with decisions—in which they participated—to purchase or use of any of the Subject Devices." *Id.* at *31-32. As in *Medtronic*, the Relator does not make any attempt to allege facts suggesting a link between the Janssen Defendants'

---

[10]As part of Count V, Relator also makes reference in Paragraph 294 to unlawful referrals under the Stark Act, 42 U.S.C. § 1395nn. Because Relator has made no allegations regarding referrals or inappropriate business relationships between physicians and outpatient clinics or other organizations, Relator has failed to state a claim under this federal law.

-14-

conduct and any actual false claim.  Paragraph 4 is typical of many of Relator's
allegations in this regard.  Relator makes a general allegation that unrestricted
grants, lavish meals, and paid travel to prestigious vacation destinations were
provided to physicians as part of a *quid pro quo* kickback scheme, but does not
allege any specifics about who received these benefits, from whom, how any of the
meals, speaker fees, or other alleged benefits were excessive or otherwise improper,
or whether any physician was induced to prescribe one of the relevant products to a
federally insured patient.  Instead, Relator devotes numerous pages to statements
that on a certain date the Janssen Defendants paid a certain amount for a meal for a
physician or "a doctor's office."  *See, e.g.,* FAC, at ¶¶ 166-185; Exs. 33-39.
Similarly, Relator attached several photographs as Exhibit 40, most of which show
people having a meal or eating birthday cake.  Again, though Relator identifies the
physicians appearing in some of these photographs in Paragraph 186, the
allegations do not assert any connection between the physician who received these
meals and that physician's prescribing activity.  Indeed, most of the meals-related
allegations do not even include the names of the attendees, the drug allegedly being
promoted, the name of the physician, the physician's specialty, referring only
generically to a "doctor's office."  *See, e.g.,* FAC,  at ¶¶ 171-183.

Relator's allegations regarding speaker fees suffer from the same
deficiencies.  In *Celgene*, the court explained in detail the types of facts that could
support a claim that a pharmaceutical company's physician speaker program was
actually a cover for unlawful inducements.  There, the court reasoned that evidence
that the defendants had paid physicians $3,000 an hour as a speaker was not enough
for a reasonable jury to conclude that such a payment was an unlawful inducement
rather than a common and proper marketing expense.  *See Celgene*, 226 F. Supp. 3d
at 1054.  Rather, at a minimum, a relator would need some evidence showing that
the payments were out of line with industry standards *and* that there were at least
some facts indicating that the program was a sham, such as hosting speaker events

-15-

with no attendees, hosting speakers events at "inappropriate venues, such as crowded sports bars, Hooters restaurants, and on fishing trips," or that "eligibility to serve as a speaker was contingent on the number of prescriptions the physician wrote." *Id.* at 1054-55.

Here, Relator does not allege any facts suggesting that the Janssen Defendants' speaker's program was anything close to a "sham." Relator's description of the speaking events themselves are no more detailed than its descriptions of meals, generally asserting only the physician's name, the date of a speech, the amount he or she was paid for this speech (between $1,000 and $2,500), and the general topic of the presentation. *See* FAC at ¶¶ 203-212; Exs. 46-57.

Further, Relator fails to allege specific facts suggesting that the Janssen Defendants' selected speakers solely based on prescribing behavior or mandated that physician speakers maintain a certain level of prescribing activity in exchange for participation in the program. For example, in Paragraph 157, Relator insinuates that prescribing behavior was tied to participation in the speaker's program. But, neither Exhibit 26 nor Exhibit 27, both cited to support this allegation, support such an inference. Exhibit 26 specifically identifies that the criterion sales representatives are to consider when recommending speakers are the speaker's reputation with other physicians and favorability based on "programs or conversations" with those physicians—not their prescribing activity. Exhibit 27, alleged to be a speaker roster, also says nothing about prescribing behavior. Similarly, Exhibit 42, purportedly part of a business plan, indicates that doctors were being identified as potential speakers based on their status as "key opinion leaders" in the field. It is no surprise that Janssen wanted to work with physicians who understood and used their medicines, but there are no specific facts alleged that eligibility to serve as a speaker was contingent on prescription volume. For the same reasons, Relator's vague insinuations in Paragraphs 218, 219, 270, and 271

that the Janssen Defendants' tracked prescribing behavior and "ROI" fail to give rise to a plausible inference of unlawful behavior.

Relator's claims about other alleged improper benefits provided to physicians are similarly unavailing. For example, in Paragraph 227, Relator describes the Janssen Defendants' sponsorship of a table at a charity event hosted by the American Liver Foundation—a non-profit organization—as a kickback to a particular physician, Dr. Hassanein. Nothing in Relator's allegation explains, however, how sponsoring a table at this charitable event could be even considered a benefit to Dr. Hassanein, much less how such a benefit was intended to and actually did influence him. Similarly, Relator's vague, salacious allegations in Paragraph 150 that attendees at Janssen events used illegal drugs and obtained "prostitution services" likewise fails to identify the specifics about when these events allegedly occurred[11] or who was involved.

Given the complete absence of such required facts, Counts IV, V, and VI should be dismissed.

## V.   ADDITIONAL REASONS FOR DISMISSAL

### A.   Relator Cannot Establish Any Basis to Proceed Anonymously

Relator's claims should be dismissed because she has filed the First Amended Complaint anonymously as "Jane Doe" without either seeking leave from this Court or providing the requisite showing as to why it is necessary for her to proceed anonymously. Because the "use of fictitious names runs afoul of the public's common law right of access to judicial proceedings," and causes "prejudice to the opposing party," the Ninth Circuit allows parties to use pseudonyms only in the "unusual case" where plaintiff can demonstrate that such use is necessary to protect a vulnerable plaintiff from threats of serious harm. *See*

---

[11] In paragraph 150, Relator added an allegation that one unidentified physician received money in 2009 for an office remodeling project. Even if this conduct occurred and was not proper, it is barred by the FCA's six-year statute of limitation as explained in Section V.B.

1   *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir.
2   2000).

3       Relator has not made – nor could she make – any such showing here.
4   Indeed, given that Relator appears to have published both her identifying
5   characteristics and details about herself in several allegations in the First Amended
6   Complaint, *see, e.g.,* FAC ¶ 254 (noting that Relator won a specific internal award
7   in April 2015), and has attached what appear to be multiple self-identifying
8   documents to the First Amended Complaint, *see, e.g.,* Exhibits 17, 28, 41, Relator
9   cannot establish any basis to allow her to proceed as Jane Doe.  Under these
10  circumstances, Jane Doe's claims should be dismissed.  *See Doe v. UNUM Life Ins.*
11  *Co. of Am.*, 164 F. Supp. 3d 1140, 1147 (N.D. Cal. 2016) (denying plaintiff's
12  motion to proceed anonymously because "the primary harm asserted [wa]s
13  embarrassment" and "the stigma is no greater" than that faced by other similarly
14  situated plaintiffs).

15      **B.    Relator's Claims Before September 2010 Are Barred**

16      Relator's claims before September 2010 should be dismissed with prejudice
17  because they are barred by either the FCA's six-year statute of limitations or ten-
18  year statute of repose.  *See* 31 U.S.C. § 3731(b); *see also United States ex rel. Hyatt*
19  *v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996).  Relator filed the original
20  Complaint in September 2016, therefore, any claims based on conduct that occurred
21  before September 2010 should be dismissed with prejudice.

22      **C.    Relator's Claims Based On Publicly Disclosed Information**

23      Relator's claims regarding average wholesale prices and Nucynta also should
24  be dismissed based on the public disclosure bar of 31 U.S.C. § 3730(e)(4)(A).  This
25  provision "deprives federal courts of subject matter jurisdiction when a Relator
26  alleges fraud that already had been publicly disclosed." *United States ex rel.*
27  *Mateski v. Raytheon Co.*, 816 F.3d 565, 569 (9th Cir. 2016) (internal quotations and

28

-18-

JANSSEN DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT

1   citations omitted).[12]

2          Relator's allegations related to schemes to increase drug prices through

3   manipulation of  wholesale prices, *see* FAC at ¶¶ 232-243, have been the subject of

4   considerable press coverage and major federal class action litigation since at least

5   2007.  *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24

6   (1st Cir. 2009) (affirming the district court's opinion and explaining, in part, the

7   history of the average wholesale price class action litigation); *United States ex rel.*

8   *Lager v. CSL Behring, LLC, et al.*, No. 4:14-CV-841CEJ, 2016 WL 233245 (E.D.

9   Mo. 2016) (dismissing False Claims Act claims based on allegations of average

10  whole sale price fraud because those claims were barred by prior public disclosure).

11  Similarly, Relator's allegations regarding promotion of the pain relief medication

12  Nucynta were previously disclosed in a lawsuit filed in 2014 by the City of Chicago

13  against several drug manufacturers, including certain of the Janssen Defendants.

14  *See, e.g., City of Chicago v. Purdue Pharma L.P.,* No. 14 C 4361, 2015 U.S. Dist.

15  LEXIS 60587 (N.D. Ill. May 8, 2015).

16  **VI.    RELATOR'S STATE LAW CLAIMS SHOULD BE DISMISSED**

17         Relator also advances multiple claims arising under the false claims laws of

18  various states, but each of those claims relies on a theory that is essentially identical

19  to a claim under the federal FCA.[13]  Therefore, for the same reasons that the

20  Relator's federal claims are not adequately pleaded, Relator's state law claims

21  should also be dismissed for lack of jurisdiction and/or failure to state a claim.  *See*

22

23         [12] Prior federal lawsuits asserting similar, even though not identical, facts may qualify as public disclosure.  *See United States ex rel. Solis v. Millennium Pharms., Inc.*, 95 F. Supp. 3d 1208, 1215 (W.D. Wash. 2015).

24         [13] In addition to claims under the False Claims Act laws of several states,

25  Relator also makes claims under the laws of certain states, such as the California Insurance Frauds Prevention Act, Ins. Code §§ 1871 *et seq.* ("CA IFPA") that allow

26  relators to bring claims under nearly identical theories as a False Claims Act, but involve false claims made against private insurers rather than the government.  *See*

27  FAC ¶¶ 24-34.  For the same reasons that Relator has failed to allege any false claims submitted for payment to the government, Relator has also failed to allege

28  false claims submitted for payment to private insurers.

1  *Medtronic*, 2017 U.S. Dist. LEXIS 153887, at \*34-35 (dismissing relator's state

2  law claims because they failed on the same grounds as relator's federal claim).

3       In addition, because Relator has failed to state a claim arising under federal

4  law, the Janssen Defendants respectfully urge this Court to decline to exercise

5  supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3);

6  *see also Modglin*, 114 F. Supp. 3d at 1028 (dismissing relator's federal FCA claim

7  and declining to exercise supplemental jurisdiction).

8  **VII.   CONCLUSION**

9       For the foregoing reasons, the Janssen Defendants respectfully request this

10  Court dismiss all counts of Relator's Complaint.

11

12  Dated:  March 2, 2018

Respectfully submitted,
PEPPER HAMILTON LLP

14  By: */s/ Michael A. Schwartz*
Michael A. Schwartz

Attorney for Defendants
Janssen Pharmaceutica, N.V., Janssen
Pharmaceuticals, Inc., Janssen Research &
Development, LLC, and Ortho-McNeil