C. Brooks Cutter (SBN 121407)
bcutter@cutterlaw.com
John R. Parker, Jr. (SBN 257761)
jparker@cutterlaw.com
Celine Cutter (SBN 312622)
ccutter@cutterlaw.com
**CUTTER LAW P.C.**
401 Watt Ave., Sacramento, CA 95864
Phone: (916) 290-9400
Fax: (916) 588-9330

Mychal Wilson (SBN 236189)
mychal@mychalwilsonesq.com
**THE LAW OFFICE OF MYCHAL WILSON**
401 Wilshire Blvd., 12th Floor
Santa Monica, CA 90401
Phone: (424) 252-4232
Fax: (310) 424-7116

*Attorneys for Relator*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>and<br><br>THE STATES OF ARKANSAS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND MASSACHUSETTS, MICHIGAN, MINNESOTA, MISSOURI, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH | Case No. CV16-06997-RGK-RAOx<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS<br><br>Action Filed: September 16, 2016<br>Trial Date: Not Set |

1  CAROLINA, OKLAHOMA,
2  RHODE ISLAND, TENNESSEE,
   VERMONT, VIRGINIA,
3  WASHINGTON, AND THE
4  DISTRICT OF COLUMBIA

5  ex rel.

6  ALEXANDER VOLKHOFF, LLC,

7  Relator
                        Plaintiff,
8  vs.

9  JANSSEN PHARMACEUTICA
10 N.V., JANSSEN
   PHARMACEUTICALS, INC., and
11 JANSSEN RESEARCH
12 DEVELOPMENT, LLC,
13 JOHNSON & JOHNSON, and
   ORTHO-MCNEIL
14
15                      Defendants.
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................... 1

II.     SUMMARY OF RELATOR'S ALLEGATIONS ................... 1

III.    THE LEGAL STANDARD THAT APPLIES TO THE COMPLAINT .. 3

        A. Pleading Particularity Standard .............................. 3

        B. Elements of False Certification Claim ..................... 3

        C. Materiality Under False Claims Act ....................... 4

    IV.     ARGUMENT ....................................... 5

        A. To expand market share of their drugs, Defendants illegally promoted off-label uses ......................................... 5

        B. To increase sales of their drugs, Defendants illegally paid kickback to doctors ............................................. 9

        C. As an extra incentive, Defendants created a pricing "spread" so that the government would over-reimburse for drugs, generating profit for customers ........................................ 12

        D. Defendants' fraudulent conduct materially caused health care providers to submit false claims ..................................... 12

        E. Defendants knew their actions were false and fraudulent ................... 13

        F. The first-to-file bar does not apply to the FAC because the Relator is the same person as in the original complaint ........................... 15

        G. The statute of limitations does not bar Relator's claims ..................... 16

        H. Relator has adequately pleaded the state law claims, which are not barred ............................................. 17

        I. Defendants have waived all arguments not asserted in their respective motion to dismiss ..................................... 17

V.      CONCLUSION ....................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Alioto v. Town of Lisbon*,
   651 F.3d 715 (7th Cir. 2011) ............................................................................. 17

*United States ex rel. Brown v. Celgene* (*Celgene*),
   226 F. Supp. 3d 1032 (C.D. Cal. 2016) .............................................. 5, 9, 10, 12

*U.S. ex rel. Campie v. Gilead Scis.(Gilead)*,
   862 F.3d 890 (9th Cir. 2017) ........................................................................... 3, 4

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*,
   447 U.S. 557 (1980) ............................................................................................ 6

*U.S. ex rel. Ebeid v. Lungwitz (Ebeid)*,
   616 F.3d 993 (9th Cir. 2010) ........................................................................... 3, 5

*U.S. ex. rel. Franklin v. Parke-Davis*,
   2003 U.S. Dist. LEXIS 15754 (2003 D. Mass.) ............................................... 12

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
   792 F.3d 1121 (9th Cir. 2015) .......................................................................... 11

*Hendow v. University of Phoenix*,
   461 F.3d 1166 (9th Cir. 2006) ........................................................................ 3, 4

*United States ex rel. Hutcheson v. Blackstone Med. Inc.*,
   647 F.3d 377,391-92 ......................................................................................... 12

*United States ex rel. Hutcheson v. Blackstone Med. Inc. (Hutcheson)*,
   647 F.3d 377 (1st Cir. 2011) ........................................................................... 4, 9

*United States ex rel. Hyatt v. Northrop Corp.*
   91 F.3d 1211 (9th Cir. 1996), *vacated on other grounds*, 117 S. Ct.
   2476 (1997) ...................................................................................................... 16

*United States ex rel. Little v. Triumph Gear Sys.*,
   870 F.3d 1242 (10th Cir. 2017) ....................................................................... 15

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*,
  538 U.S. 600 (2003) ........................................................................................ 7

*National Prescription Opiate Litigation*,
  No. 1:17-MD-02804 (N.D. Ohio, March 1, 2018) .................................... 6

*In re: Pharmaceutical Industry Average Wholesale Pricing*,
  588 F. 3d 24 (1st Cir. 2009) .............................................................. 11

*United States ex rel. Saaf v. Lehman Brothers*,
  123 F.3d 1307 (9th Cir. 1997) .......................................................... 16

*U.S. ex rel. Solis v. Millennium Pharmaceuticals, Inc.*,
  No. 15-16953, Slip op. (9th Cir., March 15, 2018) ............................ 12

*U.S. ex rel. Solis v. Millennium Pharms., Inc.*
  95 F. Supp. 3d 1208 (W.D. Wash. 2015) ........................................... 12

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ............................................................................ 7

*Universal Health Services, Inc. v. United States ex. rel. Escobar*,
  136 S. Ct. 1989 (2016) ........................................................................ 4

*United States ex rel. Vatan v. QTC Med. Servs., Inc.*
  No. 16-55406, slip op. (9th Cir. Jan. 12, 2018) ................................. 3

*Zixiang Li v. Kerry*,
  710 F.3d 995 (9th Cir. 2013) ............................................................ 17

**Statutes**

31 U.S.C. § 3729 (a)(1)(A)-(C) ............................................................ 14

31 U.S.C. § 3729(b) ................................................................ 12, 13, 14

31 U.S.C. §3731(b)(1) ........................................................................ 16

31 U.S.C. §3731(b)(2) ........................................................................ 16

31 U.S.C. § 3730(b)(5) ....................................................................... 15

42 U.S.C. § 1320a-7b ........................................................................... 9

False Claims Act ........................................................................ 3, 4, 15

**Other Authorities**

First Amendment ................................................................................. 6, 7, 8

Federal Rules of Civil Procedure Rules 9(b), 12(b)(1) and 12(b)(6) ............... *passim*

## I. INTRODUCTION

This is a case about Defendants' (Janssen Pharmaceutica, N.V., Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Ortho-McNeil, and Johnson & Johnson) (collectively, "Defendants") comprehensive plan to break the law to increase sales of their drugs at the expense of the American taxpayer. Defendants seek to dismiss Relator's First Amended Complaint ("FAC") under Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] As set forth below, the motions should be denied because the FAC describes in detail how Defendants: (1) promoted off-label uses of their drugs that were neither medically accepted, nor approved by the FDA; (2) influenced prescriptions with kickbacks; and (3) fraudulently created huge pricing spreads on drugs paid for by governments providers, so that the government overpaid for Defendants' drugs. Prescriptions influenced by these types of fraud were ineligible for reimbursement and were therefore false when they were submitted to the government.

Relator tried to raise concerns about Defendants' sales tactics within the company, and Defendants responded by retaliating.

## II. SUMMARY OF RELATOR'S ALLEGATIONS

Relator has worked in pharmaceutical sales since 2005, when Relator began working as a Janssen sales representative in Los Angeles, California, promoting multiple prescription drugs, including those contained in the FAC.

First, Relator alleges that Defendants illegally marketed their drugs, including Nucynta, Nucynta ER, Ultram ER, Olysio, Xarelto, Levaquin, Invokana, and Simponi for off-label use, causing physicians to write prescriptions for off label use that resulted in claims submitted for reimbursement. Defendants illegally marketed Olysio off-label to treat HIV and renal failure patients, and for other uses

---

[1] For efficiency, Relator is opposing both Defendants' motions in this brief. Relator contends that Defendants are jointly and severally liable for their submission of false claims, and they are co-conspirators and co-partners in the acts alleged. *See* FAC ¶ 47.

that are not approved by the FDA. Defendants additionally illegally marketed the opioid pain drugs Nucynta, Nucynta ER, and Ultram ER in ways that increased the risk of addiction. Defendants also illegally marketed Xarelto, Levaquin, Invokana, Simponi, and other drugs in dangerous off-label manners. FAC ¶¶ 51-146.

Second, the FAC also pleads in detail that Defendants undertook a fraudulent course of paying <u>kickbacks</u> used to promote Nucynta, Nucynta ER, Ultram ER, Olysio, Xarelto, Levaquin, Invokana, Simponi, Aciphex, Elmiron, Remicade, and Imbruvica. Relator also alleges that this scheme violates the Medicare and Medicaid Anti-Kickback Laws, 42 U.S.C. § 1320a-7b(b), *et seq.,* involving money and in-kind incentives provided to prescribers in exchange for increasing prescriptions. These incentives include sham speaker programs, cash payments to "consultants" and "preceptors," cash payments for a "speaker's bureau," cash payments for appointments to national and regional "advisory boards," and cash payments for participation in teleconferences, post-market research, and "case studies." FAC ¶¶ 147-217.

Third, Relator describes Defendants' fraudulent pricing scheme, which provides yet another incentive for doctors to prescribe, or for pharmacists to recommend, Defendants' drugs. FAC ¶¶ 228-243. Defendants marketed an excessive "spread" between the actual cost of drugs and the amount that the government would reimburse for such drugs, resulting in increased prescriptions and claims for payment at excessive and unreasonable rates, injuring the public fisc.

Relator alleges that Defendants' schemes resulted in specific sales, many of which were reimbursed by Medicaid and Medicare. FAC ¶¶ 218-227, 267-273. Relator pleads facts that show Defendants knowingly caused doctors and hospitals to submit false claims for payment. Relator pleads that Defendants trained their employees to give doctors unsolicited information about off-label use at specific conferences and phone calls. Relator further pleads that specific doctors received kickbacks from Defendants in exchange for prescribing Defendants' drugs and

pleads the dates and details of these kickbacks. When claims for drugs prescribed by doctors who received illegal kickbacks were presented for reimbursement, these claims were false because Defendants' illegal activities had influenced them. Relator pleads facts about Defendants' actions that create a highly plausible inference of fraud under the False Claims Act. The particularity of Relator's allegations meets and exceeds the particularity required by Rule 9(b) so the Court should deny Defendants' Motions to Dismiss.

## III.    THE LEGAL STANDARD THAT APPLIES TO THE COMPLAINT

A. Pleading Particularity Standard.

For FCA pleadings in the Ninth Circuit, "it is sufficient to allege 'particular' details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Ebeid v. Lungwitz (Ebeid),* 616 F.3d 993, 998–99 (9th Cir. 2010). Courts construe the FCA broadly because the Act "is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *U.S. ex rel. Campie v. Gilead Scis.(Gilead)*, 862 F.3d 890, 899 (9th Cir. 2017) (quoting *Hendow v. University of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006) and *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)).

The Ninth Circuit has recently held that a relator meets the pleading requirements of Rule 9(b) where the relator "'alleges the who, what, when, where, and how of the misconduct charged, including what is false or misleading . . . and why it is false.'" *United States ex rel. Vatan v. QTC Med. Servs., Inc.*No. 16-55406, slip op. at 2 (9th Cir. Jan. 12, 2018).  Moreover, information within the defendant's exclusive possession and control may be pleaded on information and belief and in general terms.  *Id*. at 2

B. Elements of a False Certification Claim.

In *Hendow v. University of Phoenix*, the Ninth Circuit laid out four elements of a false certification claim: (1) a false statement or fraudulent course of conduct;

(2) made knowingly; (3) causing; (4) the government to pay out money. *Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). Under this framework, an FCA claim "can be based on the allegation that a party has falsely certified compliance with a statute or regulation as a condition to government payment." *Id.* at 1168. As described below, Relator alleges that Defendants' actions satisfy each element of the *Hendow* framework.

   C. <u>Materiality Under the False Claims Act.</u>

   A claim is "materially false or fraudulent" if it "represent[s] compliance with a material condition of payment that was not in fact met." *United States ex rel. Hutcheson v. Blackstone Med. Inc. (Hutcheson)*, 647 F.3d 377, 379 (1st Cir. 2011). Defendants cite to *Universal Health Services, Inc. v. United States ex. rel. Escobar*, 136 S. Ct. 1989 (2016), which confirmed the viability of an implied certification claim. *Escobar*, however, did not establish what constitutes sufficiently pleading of materiality.   136 S. Ct. at 2004 ("[W]e vacate the First Circuit's judgment and remand the case for reconsideration of whether respondents have sufficiently pleaded a False Claims Act violation.")

   The Ninth Circuit, carefully analyzing *Escobar*, has subsequently held that where "relators allege more than the mere possibility that the government would be entitled to refuse payment if it were aware of the violations," relators have "sufficiently plead[ed] materiality" for the purposes of a motion to dismiss. *Gilead Scis.*, 862 F.3d at 907 (citing *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 334 (9th Cir. 2017).[2]   Relator has alleged more than such possibility here. *See*, *e.g.*, FAC at ¶¶ 187 ("Had the United States and the several States known that these drugs were used due to a fraudulent kickback scheme, they would not have provided reimbursement for these drugs."); 290.

---

[2] Defendants notably make no mention of the *Gilead* case, under which Relator here has clearly pleaded sufficient facts to establish materiality.  Instead of citing *Gilead*'s binding Ninth Circuit authority on materiality post-*Escobar*, Defendants instead cite a Third Circuit opinion and a Florida trial court decision.

## IV. ARGUMENT

### A. To expand market share of their drugs, Defendants illegally promoted off-label uses.

Drug manufacturers may not promote unapproved off-label uses of their drugs, and such promotion can be the basis of a suit under the FCA. *United States ex rel. Brown v. Celgene* (*Celgene*), 226 F. Supp. 3d 1032, 1038, 1048 (C.D. Cal. 2016) (ruling on motion for summary judgment). Defendants' motions attempt to dodge this fundamental point by discussing physicians' conduct instead of their own. But precedent on this issue draws a clear distinction between what physicians may do and what salespeople may do: "Although it is perfectly lawful for physicians to prescribe drugs for off-label uses, it is generally viewed that off-label marketing is unlawful." *Id.* at 1038, n.3.

Furthermore, off-label uses which are not "medically accepted" do not fall within the definition of a covered drug under Medicare part D. The Ninth Circuit has held that a non-reimbursable claim for payment is a false claim under the FCA. *Ebeid*, 616 F.3d at 996-98. Because Relator describes numerous instances of Defendants' unlawful off-label marketing, Defendants' contention that Relator's off-label claims should be dismissed is baseless.

#### i. Relator alleges extensive off-label marketing by Defendants.

First, the FAC details the Defendants' off-label marketing of opioid drugs. FAC ¶¶ 61-88. Relator alleges that Defendants' long-acting opioid drugs Nucynta ER and Ultram ER were labeled for treating pain when other treatment options were inadequate, but Defendants promoted these drugs as a first choice, rather than as an alternative. FAC ¶¶ 61-65. Defendants encouraged the use of their short-acting opioid Nucynta on top of long-acting opioids for chronic pain patients, rather than as a short-term solution for acute pain. FAC ¶62. Defendants promoted the dangerous practices of prescribing a rotating opioid regimen, and of stacking Nucynta in addition to long-acting opioids, all while using misleading language to

downplay the risk of addiction and overdose. FAC ¶¶ 65-88. In fact, Relator alleges that getting patients hooked on opioids was part of Defendants' business model: sales representatives "were paid by baseline growth of Nucynta prescriptions, not by the number of new prescriptions" which could only be achieved if patients kept taking Nucynta beyond the labeled ninety-day period. FAC ¶ 79.[3] The FAC attaches exhibits that show Defendants' internal training documents with the misleading selling points, and emails showing compensation based on long-term sales. FAC Ex. 2-7.

Second, Relator alleges that Defendants illegally marketed the hepatitis C drug Olysio for off-label use. FAC ¶¶ 89-106. Olysio has a limited indication: for treatment of hepatits C patients in combination with two other drugs, Peginterferon alfa and Ribavirin. But, according to the FAC, Defendants successfully promoted off-label use so that from November 2013 to November 2014 ninety-eight percent of Olysio prescriptions were written in an off-label manner, and the company made $2.3 billion selling it. FAC ¶¶ 91, 94, Ex. 10. The FAC alleges that Defendants paid physicians to promote off-label use and coached these physician speakers to have a planted audience member ask about off-label use. FAC ¶¶ 95-96. The FAC explains how Defendants tried to hide their off-label promotion by describing it as "spontaneous" use. FAC ¶¶ 100-102. The FAC also identifies salespeople and physicians involved with off-label use, as well as dates and locations of off-label promotion. FAC ¶¶99-105.

Defendants argue (in a twenty-one-line footnote) that at least some off-label promotion of Olysio is protected by the First Amendment. (Dkt. 40-1 at 6, n.4) But there is no First Amendment protection for "commercial speech related to illegal activity." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 563-64 (1980). Nor would imposing FCA liability based on

---

[3] The federal government has borne substantial costs because of the opioid epidemic. *See Statement of Interest of the U.S., In re: National Prescription Opiate Litigation,* No. 1:17-MD-02804 (N.D. Ohio, March 1, 2018) (Dkt. #161)

commercial speech violate the First Amendment. "[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). Defendants may not immunize themselves from FCA liability simply by using speech to accomplish the plainly impermissible goal of causing the submission of false claims to the government. *See Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003) ("[T]he First Amendment does not shield fraud.") Moreover, Defendants' claim that their marketing of Olysio was "truthful and non-misleading" is a factual determination that cannot be decided on a motion to dismiss.

Third, Relator describes Defendants' off-label promotion of the blood thinner Xarelto. FAC ¶¶ 107-113. Xarelto is not indicated for use in medically ill patients such as those with cancer or kidney disease, but Defendants specifically marketed Xarelto to oncologists, nephrologists, and hematologists. FAC ¶¶ 110-113. In doing so, Defendants downplayed the risk of bleeding deaths in their trials, claiming inaccurate trial design. FAC ¶ 111.

Fourth, Relator describes Defendants' off-label promotion of the powerful antibiotic Levaquin. FAC ¶¶ 114-124. Although this drug carries serious risk of side effects including tendon rupture and nerve damage, Defendants instructed their salespeople to make it sound as safe as drinking coffee. FAC ¶¶ 115-118. Defendants encouraged doctors to use it as their go-to broad spectrum antibiotic for off-label use in mild upper respiratory infections, which often do not even need antibiotic treatment. *Id.* Defendants also suppressed adverse event reports: Relator alleges that Dr. James Jung suffered paralysis as a side effect of using Levaquin, and Dr. Spira reported he ruptured a tendon from using Levaquin. FAC ¶ 124. "In each case, Defendants' sales managers told Relator that the side effects would not be reported to the FDA." *Id.*

Fifth, Relator describes how Defendants promoted the diabetes drug

Invokana off-label as a weight-loss drug, while downplaying the fact that Invokana doubled the risk of foot and leg infections. FAC ¶¶ 125-127.

Sixth, Relator alleges that Defendants promoted off-label use of Simponi for autoimmune diseases for which it was not indicated. FAC ¶ 128.

> *ii. The FAC details Defendants' comprehensive efforts to encourage off-label drug prescriptions.*

In addition to identifying the specific off-label uses that Defendants promoted, the FAC also describes Defendants' wrap-around efforts to grow the off-label market and get insurers to cover off-label prescriptions.

First, the FAC elaborates Defendants' scheme to induce healthcare providers to overcome insurance prior authorization to "pull-through" off-label prescriptions. FAC ¶¶ 129-141.Health insurance plans often require prior authorization for a drug to be dispensed and costs reimbursed. If a prescription does not have prior authorization, the patient may not receive the drug their physician originally prescribed (e.g., a patient may opt to receive a generic instead of a brand-name drug) or the patient might forego treatment altogether. Defendants invested in "pull-through" to make sure that their marketing efforts resulted in patients picking up the prescriptions. FAC ¶¶131-141. Relator identifies specific names, dates, and locations of instances in which Defendants trained physicians and sales representatives on "pull-through" techniques. *Id*. Relator also describes how Defendants established a network of pharmacies to sell Simponi and Olysio off-label. *Id.*

Second, Relator alleges that Defendants paid influential physicians to prescribe, conduct research, and implement policies to promote off-label use of Defendants' drugs. FAC ¶¶ 142-146. Defendants paid physicians to participate in studies that were set up as a cover for paying kickbacks. These studies accomplished three goals for Defendants – they provided a cover for paying kickbacks to doctors who only had to enroll a few patients in the study to receive

thousands of dollars, they generated biased research to support off-label uses, and they built brand loyalty with the participating physicians. FAC ¶¶143-146.

Accordingly, Relator has pleaded specific facts that establish a pattern and practice of false and fraudulent off-label marketing behavior by Defendants, more than sufficient to satisfy the requirements of Rule 9(b) and 12(b)(6).

B. <u>To increase sales of their drugs, Defendants illegally paid kickbacks to doctors.</u>

In addition to off-label drug promotion, Relator also alleges that Defendants violated the FCA and Anti-Kickback Statute by paying kickbacks to physicians. FAC ¶¶ 147-217. The Anti-Kickback Statute ("AKS") prohibits any person from paying remuneration to another person to induce the use of a prescription drug for which reimbursement may be sought from government health insurance. 42 U.S.C. § 1320a-7b. Claims for reimbursement for medical care arising from an illegal kickback are false claims within the meaning of the FCA. 42 U.S.C. § 1320a-7b(g); *United States ex rel. Hutcheson v. Blackstone Med. Inc.*, 647 F.3d 377, 392-93.

Sham speaker programs have been held to constitute kickbacks that violate the FCA and AKS. *United States ex rel. Brown v. Celgene* (*Celgene*), 226 F. Supp. 3d 1032, 1038, 1048 (C.D. Cal. 2016) (citing *U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497 (S.D.N.Y. Sept. 20, 2014), *U.S. ex rel. Arnstein v. TEVA Pharms., USA, Inc.*, 2016 U.S. Dist. LEXIS 22554 (S.D.N.Y. Feb. 22, 2016)). The court in *Celgene* highlighted several factors in determining whether such programs are illegal that are pertinent here: (1) repeated invitations to the same attendees on the same topic; (2) spending exorbitant amounts on the program; (3) continually recruiting doctors to be speakers without basing recruitment on need; (4) speaker eligibility contingent upon the number of prescriptions the physician writes. *Celgene*, 226 F. Supp. 3d at 1055.

The FAC describes how Defendants pushed sales representatives to host "speaker programs," even though there was no educational need for the programs.

FAC ¶¶ 153-154. Although sales representatives stated that the physicians were well-trained, Defendants insisted on continuing the program because education was not the goal -- speaker programs were simply occasions for Defendants to pay prescribing physicians fees ranging from $1,000-$3,000, and to host an expensive dinner as a reward for high prescription numbers. *Id.* The FAC also alleges that Defendants selected physicians to be "speakers" based on the volume of prescriptions the physicians wrote, and whether they would speak favorably about off-label use. FAC ¶ 157. Defendants considered physicians who only prescribed on-label uses to be unfavorable. *Id.* The FAC identifies specific examples of physicians who were targeted to be speakers based upon their prescribing behavior. FAC ¶¶ 158-160.

Furthermore, a kickback can be any kind of remuneration, whether cash, paid travel, entertainment, or meals. *See, e.g.*, 68 F.R. 23738. ("these arrangements [entertainment, recreation, travel, meals, etc.] potentially implicate the anti-kickback statute if any one purpose of the arrangement is to generate business.") The FAC provides an extensive list of meals Defendants bought for physicians and their staff in order to build and maintain sales relationships. FAC ¶¶ 164-186. Relator also provides a series of photos from dinners, "speaker programs" and birthday parties that Defendants used to promote their drugs. FAC ¶186(a)-(k), Ex. 40.

   C. As an extra incentive, Defendants created a pricing "spread" so that the
      government would over-reimburse for drugs, generating profit for
      customers.

In addition to off-label marketing and kickbacks, Relator has also blown the whistle on Defendants' fraudulent drug pricing scheme. Defendants' pricing scheme is known in the industry as a "spread." Defendants sell their drugs to customers (usually pharmacies or hospitals) at a competitive price. FAC ¶¶ 230-1. The customers then seek reimbursement from Medicaid and Medicare. FAC ¶ 232

Medicare and Medicaid reimburse customers for drugs at a price that is reported in industry compendia. *Id.* These compendia, however, are not independent fact-finders; they are functionally controlled by drug manufacturers, including Defendants. FAC ¶¶ 233-4. Defendants report a higher price to the compendia than the price at which they actually sell the drugs. FAC ¶¶ 235-239. <u>Thus, when customers seek reimbursement, they are reimbursed by the government at an artificially inflated price</u>.  The inflated prices paid by the government for Defendants' products is directly attributable to Defendants' furnishing false and misleading prices to be listed in the compendia.  At the same time, Defendants are selling at much lower prices than the list compendia. Drug purchasers can easily check a listed compendium price for Defendants' drugs and compare it with the offered contract price for the same drug to see how much the government will over-reimburse.  FAC ¶¶230-239.

Neither Janssen's nor Johnson & Johnson's motion to dismiss attacks the sufficiency of Relator's pricing fraud allegations. Janssen argues that these claims are barred by public disclosure because average wholesale pricing was the subject of litigation in *In re: Pharmaceutical Industry Average Wholesale Pricing*, 588 F. 3d 24 (1st Cir. 2009). But Relator's claims involve pricing fraud that took place after that proceeding, and if Defendants have engaged in similar illegal conduct since the resolution of that case, they are not immune from suit for that new conduct. Regardless, much of the pricing fraud alleged by Relator was not litigated in that MDL because Relator's allegations mostly pertain to different drugs.

In addition, the public disclosure bar does not block Relator's claims because Relator is an original source of these allegations. Under the original source exception to the public disclosure bar, "the relator may bring a *qui tam* suit if he can show that (1) he has direct and independent knowledge of the information on which the allegations in his court-filed complaint are based and (2) he has voluntarily provided the information to the Government before filing his civil action." *United*

1  *States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir.

2  2015); *see also U.S. ex rel. Solis v. Millennium Pharmaceuticals, Inc.,* No. 15-

3  16953, Slip op. at 10-12 (9th Cir., March 15, 2018)[4]. Here, Relator has direct,

4  independent knowledge of the pricing fraud and has disclosed these allegations to

5  the relevant government agencies. FAC ¶37-39. Accordingly, Relator qualifies as

6  an original source, and the public disclosure bar does not apply.

7         D.  <u>Defendants' fraudulent conduct materially caused health care providers to</u>

8             <u>submit false claims.</u>

9        To establish causation, Relator is "not required to identify a particular false

10  claim caused by" Defendants' fraudulent conduct. *Celgene*, 226 F. Supp. 3d at

11  1041. The law requires only a showing that the Defendants' wrongful conduct -- in

12  this case the off-label promotion, the kickbacks provided to doctors, and the pricing

13  spreads -- be a substantial factor in the submission of a false claim. *U.S. ex. rel.*

14  *Franklin v. Parke-Davis*, 2003 U.S. Dist. LEXIS 15754 at *12 (2003 D. Mass.).

15  Defendants may be held liable under the FCA for causing others to submit false

16  claims where the defendants are both the factual and legal (i.e., proximate) cause of

17  such submission. *See United States ex rel. Hutcheson v. Blackstone Med. Inc.*, 647

18  F.3d 377,391-92. A falsehood is material under the FCA if it has "a natural

19  tendency to influence, or be capable of influencing, the payment or receipt of

20  money or property." 31 U.S.C. 3729(b)(4).

21        These allegations are plainly made in the FAC – Relator pleads that

22  Defendants' fraudulent course of conduct foreseeably caused doctors and hospitals

23  to submit false claims. FAC ¶¶ 218-227.  For example, Relator alleges that

24  Defendants kept close track of doctors' prescribing behavior and determined

25  whether to reward doctors based on their prescription volume. FAC ¶220.

26

27  _____
[4] Defendants Janssen et al. cite *U.S. ex rel. Solis v. Millennium Pharms., Inc*. 95 F.
Supp. 3d 1208 (W.D. Wash. 2015), a case which does not exist. To the extent that
28  Janssen Defendants meant to cite to an opinion from the Eastern District of
California, it has been reversed by the Ninth Circuit opinion cited herein.

The FAC specifically alleges that Defendants' illegal marketing scheme proximately caused the submission of false claims to the government. For example, Relator alleges how Defendants' sales representative Amy Chun worked with Dr. Simon Chan to fraudulently fill thousands of Aciphex prescriptions, most of which were paid for by Medi-Cal. FAC ¶¶ 162-163.

In addition, the connection between Defendants' actions and the submission of the false claim is clear because Defendants' false and misleading marketing activities and kickbacks are designed to induce the provider to prescribe the drugs and submit false claims to pay for them. FAC ¶¶ 218-227. A direct, natural, and foreseeable consequence of their marketing is that medical providers prescribe the drugs off-label as marketed. *Id.* The FAC describes at length how Defendants marketed, and physicians prescribed the drugs off-label. And it is similarly natural and foreseeable that, after prescribing the drugs as marketed, providers then seek reimbursement from the government, as they always do when patients are insured by public health insurance programs. FAC ¶¶220-222.

The FAC further alleges that Defendants proximately caused submission of false claims by knowingly marketing drugs for non-reimbursable off-label uses where payment would ultimately be made from the federal and state governments and instructing physicians and their staff on how to maximize Medicaid and Medicare billing. FAC ¶ 222.

E. Defendants knew their actions were false and fraudulent.

Relator pleads that Defendants knew their actions were fraudulent and actively worked to conceal it. A defendant is liable under the FCA if it:

"(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] (C) conspires to commit a violation of subparagraph (A), (B)…"

31 U.S.C. § 3729 (a)(1)(A)-(C). A defendant "knowingly" does something if that defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). Proof of the specific intent to defraud is not required to prove knowledge. *Id*.

Here, Relator pleads that Defendants knowingly undertook their fraudulent course of conduct. Specifically, the FAC alleges that Defendants planned to induce doctors to increase off-label prescriptions and trained their sales representatives in tactics to elicit questions about off-label use. FAC ¶¶ 61-227.

Not only did Defendants plan and train their employees on how to promote off-label use, they also tracked sales representatives' effectiveness at increasing off-label use. FAC ¶219. Defendants trained physicians and staff on how to maximize billing to government insurers. FAC ¶222.

In order to increase sales, Defendants illegally paid kickbacks to doctors who were willing to prescribe the drugs off-label. Defendants trained and instructed sales representatives, business and marketing managers, and other employees to offer doctors cash payments, expensive trips and meals, and entertainment as kickbacks in exchange for the doctors' agreements to prescribe Defendants' drugs. In other words, Defendants knew exactly what they were doing.

Furthermore, Defendants knew they were acting illegally and tried to conceal their actions by funneling some payments through third-party organizations to doctors. FAC ¶¶ 215-216. Defendants made payments to doctors through the MedForce marketing company. *Id*. In one example pleaded in the FAC, Defendants contracted with MedForce to pay a speaker fee for Dr. Edward Mena to speak at Cecconi's restaurant in West Hollywood regarding Olysio, a drug which Defendants had a focused campaign to market for off-label. *Id*.

The FCA has pleaded specific facts regarding Defendants' knowledge that meet and exceed the particularity requirement for knowledge under Rule 9(b) and

the FCA; accordingly, the Defendants' Motions to Dismiss is baseless on this ground.

      F. <u>The first-to-file bar does not apply to the FAC because the relator is the same person as in the original complaint.</u>

The "first-to-file" bar of the False Claims Act provides, "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). This statute generally operates to encourage a "race to the courthouse" in which would-be relators promptly bring forward their knowledge of fraud on the government, and those who come later are barred. Here, Defendants are trying to apply this bar in a situation where no other person has intervened or brought a related action. This action is the same, and Relator has simply changed her fictional name from Alexander Volkhoff LLC to Jane Doe in order to maintain her employment retaliation claim. Defendants' cited cases only discuss how the first-to-file rule applies when a Doe pleading is used to substitute in a **different** person as relator. *See United States ex rel. Little v. Triumph Gear Sys.*, 870 F.3d 1242, 1251-52 (10th Cir. 2017). In *Little,* relator's counsel swapped out the original relator for a different natural person. Here by contrast, the same person filed both complaints, with the same counsel and functionally the same allegations. Changing the fictional name of the relator on the face of caption does not change the identity of the person. The unity of identity between Relator Alexander Volkhoff LLC and Relator Jane Doe is confirmed by the specific yet unchanged details of Relator's employment retaliation claims in both the original Complaint and the FAC.

Relator has consistently alleged *inter alia*: that she complained about Janssen's off-label marketing strategy to her manager in November 2013; that she experienced racial and religious discrimination on June 26, 2014 when her manager, Tyana Grant, made disparaging remarks about Palestinian Muslim children; that she spoke up about her concerns at a meeting in Newport in

December 2014; that she won District Representative of the Year in April 2015, but was passed over for a promotion to the district manager position; and that she was terminated on August 11, 2015. FAC ¶¶ 241-256; original complaint ¶¶ 218-230. These allegations, and the others contained in the complaint, clearly pertain to the same person, so the first-to-file bar does not apply.

G. The statute of limitations does not bar Relator's claims.

Defendants argue that Relator's claims before September 2010 should be dismissed. But this argument is flawed and would require impermissibly resolving factual questions on a motion to dismiss.

Under the FCA, a general six-year statute of limitation applies.  31 U.S.C. §3731(b)(1).  While the six-year statute of limitations applies to violations of the FCA, i.e., the submission of false claims, it does not apply to the acts of fraud that resulted in the presentation of a false claim.  Accordingly, while Relator describes some fraudulent conduct that occurred before September 2010, these allegations are definitely not barred to the extent that the conduct contributed to submissions of false claims that took place after September 2010.

Additionally, under 31 U.S.C. §3731(b)(2), a tolling rule applies that allows private relators to reach back as far as 10 years, based upon a three-year discovery rule. *United States ex rel. Hyatt v. Northrop Corp.* 91 F.3d 1211 (9th Cir. 1996), *vacated on other grounds*, 117 S. Ct. 2476 (1997); *United States ex rel. Saaf v. Lehman Brothers*, 123 F.3d 1307, 1308 (9th Cir. 1997) (ruling that tolling provision applies for the benefit of the relator, as well as the government, and that the three-year extension begins to run upon the relator's knowledge of false claims). The Ninth Circuit held that relators do not need to demonstrate fraudulent concealment in order to invoke the tolling provision. *See Lehman Brothers*, 123 F.3d at 1308 ("Although fraudulent concealment forms part of the historical rationale for the doctrine of equitable tolling, neither § 3731(b)(2) nor [Ninth Circuit precedent] imposes a requirement that a *qui tam* plaintiff must allege

fraudulent concealment to actuate tolling under the FCA.").

Here, the FAC has pleaded that Relator raised concerns with off-label marketing in 2013 and 2014, but does not plead when Relator developed an understanding that Defendants' conduct implicated FCA liability.  Accordingly, Defendants' motion to dismiss on statute of limitations grounds should be dismissed and revisited after these factual issues are developed in discovery.

H. <u>Relator has adequately pleaded the state law claims, which are not barred.</u>

For the same reasons that Relator's allegations meet the Rule 9(b) pleading standard, they also satisfy state law pleading requirements.

I. <u>Defendants have waived all arguments not asserted in their respective motions to dismiss.</u>

Defendants filed two motions to dismiss – one by Janssen Pharmaceutica, NV., Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, and Ortho-McNeil ("Janssen"), and one by Johnson & Johnson. The motions make distinct legal arguments, but each motion also contains footnotes purporting to incorporate arguments from the other. This tactic cannot save Defendants from the fact that "a party waives an argument by failing to make it before the district court." *Zixiang Li v. Kerry*, 710 F.3d 995, 1000 (9th Cir. 2013). Rather than incorporating entire pages from other briefs in footnotes, motions must develop arguments on discrete issues, and failure to do so results in waiver. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Therefore, Johnson & Johnson has waived all arguments except the two developed in its motion: (1) that Relator must differentiate between defendants, and (2) as a parent corporation Johnson & Johnson is not liable for the acts of its subsidiary. On the other hand, the Janssen Defendants have waived these two arguments.

/ / /

/ / /

/ / /

**V. CONCLUSION**

For the foregoing reasons, the FAC states a viable claim for relief, and Relator requests that the Court deny Defendants' motions to dismiss. In the events the Court grants the motion to dismiss Relator requests leave to amend.

Dated: March 19, 2018                    Respectfully Submitted,

UNITED STATES OF AMERICA, ex rel.
Relator

By:*/s/ John R. Parker, Jr.*
C. Brooks Cutter
John R. Parker, Jr.
Celine Cutter
**CUTTER LAW P.C.**
401 Watt Ave., Sacramento, CA 95864
Phone: (916) 290-9400
Fax: (916) 588-9330

Mychal Wilson
**THE LAW OFFICE OF MYCHAL WILSON**
401 Wilshire Blvd., 12th Floor
Santa Monica, CA 90401
Phone: (424) 252-4232
Fax: (310) 424-7116

*Attorneys for Relator*

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2018, I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: March 19, 2018                              */s/ John R. Parker, Jr.*
                                                   John R. Parker, Jr.